**STATE of Missouri, Respondent,**

v.

**Jerry WATSON, Appellant.**

No. 57705.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 17, 1991.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for respondent.

Gloria Clark Reno, Public Defender, Melinda Kay Pendergraph, St. Louis, for appellant.

SIMON, Judge.

Appellant, Jerry Watson, appeals his jury trial conviction of armed criminal action, Section 571.015.1 RSMo 1986. (Further references shall be to RSMo 1986 unless otherwise noted). The jury also found appellant guilty of kidnapping, Section 565.110, but the trial court suspended the imposition of sentence on the kidnapping count, and it is not a final judgment for purposes of appeal. *State v. Lynch*, 679 S.W.2d 858, 860[3] (Mo. banc 1984).

On appeal, appellant raises three points: (1) the trial court abused its discretion in overruling his request for severance from his co-defendant because a joint trial violated Section 545.880, Rule 24.06, the right to due process and a fair trial in that a probability for prejudice existed because a) co-defendant made a statement to police implicating appellant and his counsel referred to the statement during trial in violation of the trial court's order, b) appellant and his co-defendant had mutually antagonistic defenses because appellant denied any offense occurred while co-defendant maintained the offenses were perpetrated by appellant and c) appellant was subject to judge sentencing as a prior offender while his co-defendant was to be sentenced by the jury; (2) the trial court erred in a) failing to accept the jury's not guilty verdict on the kidnapping count, b) failing to discharge appellant on the armed criminal action charge once he was acquitted of the underlying felony, kidnapping, and c) resubmitting the charges of kidnapping and armed criminal action with a coercive instruction to reread the verdict form as to Count III, thereby violating appellant's Fifth Amendment right not to be placed in Double Jeopardy and his rights to due process and fair trial; and (3) the trial court erred in denying appellant's motion to quash the jury panel after the prosecutor used six peremptory challenges to exclude blacks from the jury and in failing to require the prosecutor to provide a neutral explanation for his challenges in violation

of appellant's Fourteenth Amendment right to Equal Protection. We reverse.

Appellant and James Watson, his nephew and co-defendant, were indicted for burglary in the first degree (Count I), kidnapping (Count II), and armed criminal action (Count III). The State subsequently filed a substitute information in lieu of indictment charging appellant as a prior offender under Section 558.016. The State waived use of co-defendant's statement to police, and appellant's motion for severance from co-defendant was denied. Appellant was represented by an assistant public defender [public defender], and co-defendant was represented by an assistant special public defender [special public defender].

Appellant and co-defendant reside in Venice, Illinois. Appellant occasionally did odd jobs for the victim, Robert Fisher [Fisher], such as cutting grass, cleaning construction sites and other projects. In November of 1988, Fisher hired appellant and appellant's brother, Emanuel Watson, to do some work around his house at 4434 Blair Avenue in St. Louis. Fisher left the two alone at the house and left the basement door open so tools could be put away. Fisher returned after the two men had left. He discovered that some change, a half pint of liquor and a gold chain were missing. Fisher believed appellant had taken the items. Subsequently, appellant went to Fisher's house to borrow six dollars. Fisher refused. At that time, Fisher told appellant he would not pay him for the work appellant had done until he returned the gold chain.

On December 15, 1988, appellant and co-defendant went to Fisher's house to get the money Fisher owed appellant for the work. Appellant testified that Fisher was at home and invited him in. Co-defendant testified that Fisher was not at home, and they entered the house through a wood panel in the back door. Fisher testified he arrived home at approximately 7 p.m. He entered the house through the front door, turned on the porch light and proceeded to the kitchen. Fisher noticed that a board covering the kitchen door window was on the floor. According to Fisher, appellant and co-defendant were in the house when he arrived. Fisher testified he saw appellant coming out of the dining room with a machete and a pistol and saw co-defendant coming out of the bathroom with a butcher knife. Appellant and co-defendant testified that co-defendant never had the knife in his hand. Appellant testified that he did not have a pistol but testified that he left the machete on the kitchen table earlier because he had used it to do yard work, and he picked it up but did not use it to threaten Fisher. Fisher testified that when he saw the two men, he started backing up toward the kitchen, and the two men followed him. He also testified that appellant said, "I told you I'm going to get up on you." Fisher asked appellant what he wanted and appellant told him he wanted his money. Appellant and Fisher argued about the money. Co-defendant went into the living room, and appellant and Fisher continued to argue. Fisher believed he owed appellant eighty dollars for the work, but appellant thought the amount was $150. Fisher said he would pay appellant eighty dollars if he returned the gold chain, but appellant indicated he wanted the $150. Co-defendant went into the kitchen to tell appellant to hurry. Co-defendant stated, "We didn't come here for this. Let's do what we came to do and let's get out of here." Appellant and co-defendant testified Fisher offered appellant drugs instead of the money, which Fisher denied. Fisher told appellant he only had twenty dollars and offered to get money from his father's house. The three started toward the front door, but Fisher remembered his keys were in the kitchen. All three then returned to the kitchen. Fisher testified co-defendant stated they could not let Fisher leave because he might call the police. They then heard someone knock at the front door and headed toward the front of the house. Appellant told Fisher to tell the person to go away. They found no one at the door and proceeded back to the kitchen. At about this time, Chester H. Perine, an employee of Fisher's, went by the Fisher house. He looked in and saw Fisher with his hands up and appellant backing Fisher up with a machete. Perine ran to a nearby liquor

store and called police. Police officers arrived at the Fisher house and shined spotlights into the windows. Two officers went to the front door, while a third officer went to the back of the house. Appellant told co-defendant to go to the front door. Co-defendant started toward the front door and then went toward the kitchen to tell appellant the police were there. The officers at the front of the house looked in through a window in the door and observed co-defendant, wearing a baseball cap, bent over and heading to the back of the house. One officer started toward the rear of the house and yelled to the third officer that someone was running to the back. Fisher testified appellant and co-defendant "ushered" him out of the back door. According to the two officers who were at the front of the house, they arrived at the back yard and observed two men escorting a third man onto the back porch and then observed all three individuals running toward the fence in the back yard. The third officer testified that he pulled himself up on a wooden privacy fence and observed three individuals exit the house. According to the officer, one man held a gun to the middle subject's head and had a machete in his other hand. The third person had a long, silver-bladed butcher knife in his left hand. Both men were holding the middle subject. One of the officers who had gone to the front of the house testified he ran to the back of the yard which had a chain link fence, climbed over the fence, yelled, "Halt", and the two men dropped the weapons. Appellant testified that he was not holding on to Fisher and that he ran out the door with the machete when the police came, but denied having the gun. He stated that the gun retrieved by the officers was a toy gun Fisher's children had left in the back yard. Appellant stated he threw the machete into a tree before the officers arrived in the back yard. Co-defendant testified he did not see any weapon in appellant's hands. The officers told the men to lie on the ground and handcuffed all of them. Appellant testified that while he was on the ground the officers kicked him in the face. Co-defendant testified that while he was on the ground the officers kicked him in the head and hit him with black jacks. The officers denied this. Fisher identified himself, the officers checked his identity and released him. They recovered a machete, a knife, a plastic pistol and a baseball cap from the back yard. Co-defendant made a statement to police. Appellant filed a motion to sever the trials of appellant and co-defendant and a motion in limine to suppress the use of the statement. The motion to sever was denied. The State agreed to waive use of co-defendant's statement. The trial court ruled that the statement was not admissible and admonished trial counsel to refrain from referring to it.

The jury acquitted co-defendant on all three counts. As to appellant, the jury returned verdicts of not guilty on the burglary (Count I) and kidnapping (Count II) charges and a verdict of guilty on the armed criminal action count (Count III). The trial court found the not guilty verdict on the kidnapping charge and the guilty verdict on the armed criminal action charge to be "conflicting" verdicts. Following a bench conference, the trial court stated it could not receive the "inconsistent" verdicts and would send the jury back with new verdict forms as to appellant only. Appellant objected, stating,

I'd like to object on the verdict on the kidnapping. He's already been found not guilty on that count. I think perhaps the Court's instructions that they cannot except (sic) it somehow sways the jury in thinking they have to change their minds. And they have already made up their minds. And I think double jeopardy would attach.

The trial court resubmitted on Count II (kidnapping) and Count III (armed criminal action) and instructed the jury to "reread actually the verdict form itself as to Count III ..." and to "deliberate further and return verdicts just as to those sets of forms I have sent back with you." Subsequently, the jury returned verdicts of guilty on both the kidnapping and the armed criminal action counts and assessed punishment at five years for kidnapping and three years for armed criminal action. The

jury was polled and discharged. The trial court stated it would have the court reporter type at the bottom of the original verdict forms submitted and returned, "Original verdict returned by the jury, but not accepted by the Court", but the legal file contains only the armed criminal action verdict form bearing this notation. On the kidnapping count, the trial court suspended the imposition of the sentence and placed appellant on unsupervised probation for five years and sentenced appellant to three years on the armed criminal action count. Appellant's motion for judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, for a new trial was denied.

We find appellant's second point to be dispositive of this appeal wherein appellant essentially contends that the trial court erred in failing to accept the jury's "NOT GUILTY" verdict on kidnapping and failing to discharge appellant on the charge of armed criminal action which required a finding that appellant committed the offense of kidnapping. Appellant further contends that the trial court erred in resubmitting the charges of kidnapping and armed criminal action after the jury returned a "NOT GUILTY" verdict on kidnapping. Appellant argues that the court's actions violated his right not to be placed in double jeopardy, to due process, and to a fair trial.

The relevant jury instructions are Instruction No. 6 and Instruction No. 7. Instruction No. 6 is a verdict directing instruction tracking MAI–CR 3d 319.24 and provides in pertinent part:

### Instruction No. 6

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on December 15, 1988, in the city of St. Louis, State of Missouri, [appellant] removed Robert Fisher from inside the house at 4434 Blair, and

Second, that such removal was by means of forcible compulsion and was without the consent of Robert Fisher, and

Third, that [appellant] removed Robert Fisher for the purpose of facilitating flight after the commission of burglary in the first degree of the residence at 4434 Blair,

then you will find [appellant] guilty under Count II of kidnapping.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [appellant] not guilty of that offense.

As used in this instruction, the term "forcible compulsion" means either physical force that overcomes reasonable resistance or a threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping.

\*       \*       \*       \*       \*       \*

Instruction No. 7, a verdict directing instruction which tracks MAI–CR 3d 325.02 (replaced by MAI–CR 3d 332.02, effective 9–1–90), provides in pertinent part:

### INSTRUCTION NO. 7

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that [appellant] committed the offense of kidnapping, as submitted in Instruction No. 6, and

Second, that [appellant] committed that offense by or with or through the use or assistance or aid of a dangerous instrument,

then you will find the [appellant] guilty under Count III of armed criminal action.

As used in this instruction, the term "dangerous instrument" means any instrument, article, or substance which under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the [appellant] not guilty of that offense.

\*       \*       \*       \*       \*       \*

Additionally, the verdict form used for the armed criminal action count tracks Verdict Form MAI–CR 3d 304.48:

### VERDICT

As to Count III, we, the jury, find the [appellant] guilty of armed criminal action as submitted in Instruction No. 7.

We, (sic) assess and declare the punishment for armed criminal action at

_____

_____

### FOREMAN

Note: Unless you have found [appellant] guilty of kidnapping as submitted in Instruction No. 6, you may not complete this verdict finding the defendant guilty of armed criminal action as submitted in Instruction No. 7.

Based on these instructions, the jury had to find appellant guilty of kidnapping before it could reach a verdict of guilty of armed criminal action. Initially the jury returned a verdict of "NOT GUILTY" of Count II (kidnapping) and "GUILTY" of Count III (armed criminal action). The trial court, being uncertain as to how to deal with these verdicts, decided to resubmit them to the jury. No further inquiry was made nor was the jury polled prior to the resubmission.

Instructions 6 and 7 and the verdict form clearly set forth the elements of each count and the instruction as to the rendering of a guilty verdict on the armed criminal action count. Kidnapping is defined by Section 565.110, in pertinent part, as follows:

1. A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his consent for a substantial period, for the purpose of ... (4) facilitating the commission of any felony or flight thereafter.

2. Kidnapping is a class A felony unless committed under subdivision (4) or (5) of subsection 1 in which cases it is a class B felony.

Further, Section 565.100.2 provides that "lack of consent results from forcible compulsion or incapacity to consent."

Essentially, to be guilty of armed criminal action a person commits any felony, under the laws of this state, "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Section 571.015.1. Thus, armed criminal action requires the commission of an underlying felony.

The parties have not cited, nor has our research uncovered, any Missouri cases dealing with the specific issue presented for review.

However, a similar situation is presented in *State ex rel. Pruitt v. Adams*, 500 S.W.2d 742 (Mo.App.1973). In *Pruitt*, the jurors were given an instruction on burglary in the second degree and an instruction on burglarious stealing which was predicated on a finding of guilty of burglary in the second degree. *Id.* at 742, 743. The jury returned verdicts of not guilty of burglary in the second degree and guilty of stealing in connection with burglary. *Id.* at 743. The court sent the jury back to deliberate further. *Id.* The jury then returned with verdicts of guilty as to both charges. *Id.* Upon review our court ruled that the trial court should have accepted the not guilty of burglary verdict form and proceeded accordingly. *Id.* We further stated that the burglary verdict form was clear on its face determining that relator was not guilty of burglary. *Id.* See *State v. Collins*, 465 S.W.2d 576 (Mo.1971). Having been found not guilty of burglary, relator could not have been found guilty of burglarious stealing. *Id.* at 744.

Here, the initial verdict of not guilty of kidnapping was clear on its face and was in proper form. The inconsistency noted by the respected trial judge arose only when this verdict was considered in conjunction with the guilty verdict for armed criminal action. It is clear from the instructions that a verdict of guilty of kidnapping was an indispensable prerequisite to a finding of guilty of armed criminal action in connection with kidnapping. Thus, the trial court should have accepted the verdict of

"NOT GUILTY" of kidnapping and rejected the armed criminal action verdict.

We recognize the general rule that a verdict of acquittal on one count and a verdict of conviction on another count is not necessarily damaging, at least where each offense requires different evidence or involves factual variations. 23A C.J.S. Criminal Law, Section 1407 p. 347–348 (1989) (footnotes omitted). Here, appellant was convicted of armed criminal action and acquitted of kidnapping. Armed criminal action, by its definition, incorporates all the elements of the underlying felony. Section 571.015. Paragraph first of MAI–CR 3d 325.02.1 (replaced by MAI–CR 3d 332.02) provides that to be guilty of armed criminal action, where the underlying felony of kidnapping is charged in a separate count, a finding of guilty must be made with respect to the kidnapping count. Alternatively, armed criminal action may be submitted, where the underlying felony is not charged in a separate count. MAI–CR 3d 332.02.3 (formerly MAI–CR 3d 325.02). In this situation, the verdict directing instruction submits each of the elements of the underlying felony. Thus, it is clear from the statutory definition and the appropriate MAI–CR instructions that armed criminal action cannot stand on its own when submitted in conjunction with the underlying felony. A conviction on the armed criminal action charge is dependent upon a finding of guilty of the underlying felony. The underlying felony and armed criminal action charge are so intertwined that a person cannot be tried and convicted of the underlying felony and then later tried on the armed criminal action charge. *State ex rel. Bulloch v. Seier*, 771 S.W.2d 71, 75[2] (Mo. banc 1989) *cert. denied*, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990).

Here, the conviction of armed criminal action cannot stand where appellant was acquitted of the underlying felony of kidnapping. The trial court erred in not accepting the verdict of "NOT GUILTY" of kidnapping thereby rendering the armed criminal action conviction a nullity.

In light of our disposition of Point II a discussion of appellant's other points is not necessary.

Judgment reversed.

CRANDALL and AHRENS, concur.