STATE of Missouri, Respondent,

v.

William M. PETERS, Appellant.

No. 75036.

Supreme Court of Missouri,
En Banc.

May 25, 1993.

As Modified on Denial of Rehearing
June 29, 1993.

Susan L. Hogan, Appellant Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Ronald L. Jurgeson, Philip M. Koppe, Asst. Attys. Gen., Kansas City, for respondent.

THOMAS, Justice.

William M. Peters, appellant, was charged by indictment with one count of assault and one count of armed criminal action. The events leading to these charges occurred in January 1990. The victim was married to, but separated from, Peters at the time of the incident. They had been separated for about a year. Apparently, the victim had agreed to see Peters over the weekend of January 12, 1990, so that Peters could spend some time with his two young sons. On a trip to the park to shoot off firecrackers, Peters began to brutally beat the victim. In the course of the day, Peters repeatedly struck the victim with his fists, hit her in the back of the head with a bottle, beat her with a tire iron, and tied her up, stuffing clods of dirt into her mouth and abandoning her in a field

before returning to collect her. The victim suffered severe injuries as a result of this ruthless and brutal beating. Peters did all of these things while the two young boys were present.

Following the presentation of the evidence, instructions on assault in the first degree, assault in the second degree, armed criminal action with assault in the first degree as the underlying felony, and armed criminal action with assault in the second degree as the underlying felony were submitted to the jury. To find armed criminal action in connection with either assault charge, the instructions explicitly required a finding of guilt on one or the other assault charges as a condition precedent to a finding of guilt of armed criminal action.[1]

After deliberating for a little over 2½ hours, the jury returned a verdict of not guilty of assault but returned a verdict of guilty of armed criminal action with assault in the second degree as the underlying felony. The trial judge refused to accept the jury's verdict. The basis of the refusal was that, as the instructions expressly indicated, a defendant may not be found guilty of armed criminal action if the defendant is not also found guilty of the underlying felony. The trial judge then directed the jury to return to the jury room and stated: "All right ladies and gentlemen, you have not followed the court's instructions in the verdict forms that you have handed me.

I'll have to ask you to go back to the jury room and read the instructions carefully and let us know when you've got it figured out."

The jury deliberated for another ½ hour that evening before asking to be excused for the night. The next morning the jury returned verdicts of guilty of assault in the second degree and guilty of armed criminal action with assault in the second degree as the underlying charge. The jury recommended a one year sentence in the county jail on the assault conviction and ten years imprisonment in the Missouri Department of Corrections on the armed criminal action conviction. The trial judge accepted the jury's verdict. Peters was sentenced according to the recommendation of the jury.

■ On appeal, Peters asserts that the finding of "not guilty" of assault by the jury acquitted him of all charges of assault and armed criminal action despite their verdict of guilty on armed criminal action. Moreover, Peters contends that the trial court subjected him to double jeopardy, in violation of the Fifth Amendment of the United States Constitution and article I, section 19, of the Missouri Constitution, by sending the matter back to the jury for further deliberations.

We hold that the first two verdicts the jury attempted to return were inconsistent because if the defendant was not guilty of

1. Instruction No. 7

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Assault in the First Degree, as submitted in instruction No. 5, and

Second, that defendant committed that offense with the use of a dangerous weapon,

then you will find defendant guilty under Count II of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty under Count II of armed criminal action, you will assess and declare the punishment at imprisonment for a term of years fixed by you, but not less than three years.

Instruction No. 8

As to Count II, if you do not find the defendant guilty of armed criminal action in connection with the offense of assault in the first degree, you must consider whether he is guilty of armed criminal action in connection with the offense of assault in the second degree.

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Assault in the Second Degree, as submitted in Instruction No. 6, and

Second, that defendant committed that offense with the use of a dangerous instrument, then you will find the defendant guilty under Count II of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find defendant not guilty of that offense.

If you do find the defendant guilty under Count II of armed criminal action, you will assess and declare the punishment at imprisonment for a term of years fixed by you, but not less than three years.

assault, he cannot be guilty of armed criminal action based on assault. The court acted properly in sending the matter back to the jury for further consideration. In addition, we hold that the action of the court did not subject Peters to double jeopardy. The judgment below is affirmed.

■ Peters would like this Court to follow the analysis in *State v. Watson*, 816 S.W.2d 683 (Mo.App.1991), a case similar to the one presented here. In *Watson* the jury returned verdicts of not guilty of kidnapping, the underlying felony, but guilty of armed criminal action. The Court of Appeals, Eastern District, held that because "the initial verdict of not guilty of kidnapping was clear on its face and was in proper form," the trial court should have accepted the verdict of not guilty of kidnapping and should have rejected the verdict of guilty of armed criminal action. *See also State ex rel. Pruitt v. Adams*, 500 S.W.2d 742 (Mo.App.1973). The problem with the analysis in *Watson* is that in many situations in which there are inconsistent verdicts, each verdict will be consistent on its face; it is only when you consider them together that the inconsistency becomes apparent. Even when the inconsistency appears on the face of a single verdict, it may be necessary to ask the jury which aspect of the verdict is correct. In the final analysis, the verdict is just a communication from the jury to the judge. If the verdict is ambiguous, the best way to clarify the message is to ask the sender of the message (the jury) what was meant. Whenever possible, the jury should be allowed to resolve the inconsistency.

Many times it is impossible to have any idea which verdict is correct and which is incorrect. *State v. Cline*, 447 S.W.2d 538 (Mo. banc 1969), *cert. denied*, 398 U.S. 910, 90 S.Ct. 1706, 26 L.Ed.2d 71 (1970) (jury originally returned a verdict finding defendant guilty of felonious and burglarious stealing but the jury made no finding on the charge of burglary which is the underlying charge for burglarious stealing; held the trial court should not have accepted the verdict because the verdict returned was "incomplete and sufficiently ambiguous and confusing as to be insufficient to support either a judgment of conviction or acquittal"); *State v. Hurley*, 602 S.W.2d 838 (Mo.App.1980) (verdict assessed a punishment not authorized by law; proper to send back to jury for correction); *State v. Jones*, 583 S.W.2d 561 (Mo.App.1979) (jury foreman signed both guilty and not guilty verdict forms for each count; resubmission to the jury for correction proper).

Did the trial court err in refusing to accept the inconsistent verdicts? In *State v. Lashley*, 667 S.W.2d 712 (Mo. banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984), we said:

> The law is clear that when a jury returns a verdict in improper form, it is the *duty* of the trial court to refuse to accept the same and require further deliberations until a verdict in proper form is returned. The jury's verdict is not binding until it is accepted by the court and the jury is discharged.

*Id.* at 715 (citations omitted). The trial court was correct in not accepting the inconsistent verdicts. We overrule *State v. Watson*, 816 S.W.2d 683 (Mo.App.1991), and *State ex rel. Pruitt v. Adams*, 500 S.W.2d 742 (Mo.App.1973), and any other cases using the analysis used in these cases.

In a situation such as in the present case or in *Watson* in which one of the verdict directors incorporates the elements of another charge by requiring a finding of guilty on the underlying charge, an argument can be made that since the verdict directors in effect require the jury to resolve the underlying charge first, it is safe to assume this is the correct verdict and that the second verdict is the incorrect one. Apparently this was the rationale followed in *Watson*. While this contention is not without merit, the assumption that the first count decided (the underlying felony) is correct is not necessarily valid. For example, the error may arise simply in the process of filling out the verdict forms, in which event either verdict could be the one intended by the jury. Since the jury is still present and the trial judge and attorneys are aware of the inconsistency and the

inconsistent verdicts have not been accepted, the safest and most accurate way to resolve the ambiguity is to resubmit both counts to the jury and find out for sure which verdict is the one the jury intends.

■ It needs to be recognized that the circumstances in this case are entirely different from most cases that have dealt with the issue of inconsistent verdicts. None of the cases cited by the dissent involve situations where the trial judge refused to accept inconsistent verdicts from the jury. The cases relied on by the dissent concern whether inconsistent verdicts, which have been accepted by the trial judge and the jury has been discharged, should be enforced. In this case, the trial judge, to his credit, was alert and observed that the two verdicts the jury was attempting to return were inconsistent, and the judge refused to accept them. The dissent apparently agrees that when a single verdict is returned that has an inconsistency on its face, such as between the penalty and the guilt finding, the preferred procedure is to refuse to accept the verdict, supply the jurors with a new form and instruct them that the previous verdict was inconsistent and they should reread the instructions. On the other hand, in this case where the inconsistency appears in two different counts, the dissent insists that the trial court should have accepted the not guilty verdict even though the verdicts the jurors attempted to return clearly demonstrate that the instructions were not followed. We believe the trial judge did the proper thing in returning the verdict and asking the jury to reconsider the instructions. Only the jurors know what their intended verdicts were, and, because they are in the courtroom and available, we should afford them the opportunity to correct the inconsistency.

The dissent, in requiring acceptance of the not guilty verdict, presumes that the not guilty verdict on assault is the correct verdict. Once this assumption is made, then the platitudes set forth in the dissenting opinion become truisms. For example: "By rejecting this verdict and, in effect, resubmitting the charge to the jury, the trial

court placed Peters in *jeopardy* of a conviction for a crime 'after being once acquitted by a jury' of that same crime." Dissenting Op. at 353. The critical issue, of course, is whether defendant has in fact been acquitted by a jury. The dissent's approach assumes away this issue by requiring the trial court to accept the not guilty verdict despite its obvious inconsistency. The only sure way to determine which verdict is accurate is to allow the jurors to resolve the inconsistency. If this is done in a neutral, understandable manner (and we have to assume it was here because there was no objection from either party to the judge's instruction calling the jurors attention to the inconsistency), then the answer we receive is, in fact, the verdict of the jury.

There is nothing magical about an inconsistent verdict that is consistent on its face but is inconsistent because of some other verdict in the case. Trial judges are encouraged to make every effort to salvage an improper verdict by calling the jurors' attention to their mistake in failing to follow the jury instructions and giving them an opportunity to correct the mistake. The trial judge did exactly that. Peters was not tried twice on any count, and the double jeopardy clause has no application.

■ The oral instruction given by the trial judge when the present case was resubmitted was not objected to by either party and passes muster as being neutral. When the trial judge refuses to accept a jury's verdict and resubmits the case, there is a danger that the jury will be unusually susceptible to reading into the judge's comments an inference that the judge, in rejecting their verdict, is looking for a particular result. Therefore, we would recommend that the court's instruction resubmitting the matter to the jury should be in writing and in the case of two inconsistent verdicts specifically advise the jury which verdicts are inconsistent. *See* MAI 2.06 (for a recommended instruction for inconsistent verdicts in a civil case).

■ An attempt by a jury to return a verdict that is not accepted by the trial judge is not a verdict. A verdict is not

binding until the court accepts it and the jury is discharged. *Lashley*, 667 S.W.2d at 715; *Hurley*, 602 S.W.2d at 839–40. A trial court's refusal to accept an inconsistent verdict "is not a situation which places a defendant in double jeopardy." *Lashley*, 667 S.W.2d at 715; *Jones*, 583 S.W.2d at 562; *State v. Summers*, 501 S.W.2d 548, 550–51 (Mo.App.1973). *See also United States v. Hiland*, 909 F.2d 1114, 1136–38 (8th Cir.1990). Consequently, Peters was not subjected to double jeopardy.

The judgment is affirmed.

HOLSTEIN, BENTON, PRICE and LIMBAUGH, JJ., concur.

ROBERTSON, C.J., dissents in separate opinion filed.

COVINGTON, J., concurs in opinion of ROBERTSON, C.J.

ROBERTSON, Chief Justice, dissenting.

I respectfully dissent.

Defendant William M. Peters stood trial, accused of assault and of committing that assault "with or through the use, assistance or aid of a dangerous instrument or deadly weapon." Section 571.015, RSMo 1986. The trial court instructed the jury that, if it believed beyond a reasonable doubt that Peters "knowingly caused serious physical injury to [the victim] by beating her with a tire iron," it must find him guilty of assault in the first degree. The trial court also instructed the jury that, in the event they did not believe Peters had committed an assault in the first degree, they must find him guilty of assault in the second degree if they believed beyond a reasonable doubt that he "caused physical injury to [the victim] by means of a dangerous instrument by beating her with a tire iron." The jury, so charged after a full and fair trial, returned a unanimous verdict in proper form finding Peters not guilty of any assault whatever.

The trial court rejected this verdict on the grounds that it was inconsistent with the jury's guilty verdict on the armed criminal action count. On the strength of this conclusion, the trial court directed the jury to retire and deliberate anew on Peters'

guilt or innocence. Ultimately, the jury found Peters guilty of assault in the second degree and armed criminal action. The trial court accepted this verdict.

The threshold issue in this case is whether it was error for the trial court to refuse the jury's initial verdict of acquittal on the assault charge on the grounds that it was inconsistent with the jury's guilty verdict on the armed criminal action charge. The majority finds no error, holding that the trial court had a "duty" to reject such "inconsistent" verdicts. I disagree. When a jury returns a unanimous verdict of acquittal in proper form, state and federal protections from double jeopardy require that that verdict be respected. Therefore, the trial court erred in rejecting the jury's verdict acquitting Peters. Further, under Section 571.015, armed criminal action is a symbiotic offense; it depends entirely upon a conviction for an underlying offense; it cannot live alone. For this reason, the jury's verdict of acquittal on the assault charge necessarily disposes of the armed criminal action charge and Peters should have been discharged.

I.

The Fifth Amendment to the United States Constitution protects persons from being "subject for the same offense to be twice put in jeopardy of life or limb." The Fourteenth Amendment extends this protection to defendants in state courts—even Missouri defendants. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

The rule against double jeopardy recognizes that the right to trial by jury is one of the principal protections afforded a criminal defendant and that the jury's role serves as a powerful check against the state's arbitrary use of the power to prosecute.

> Their [the jury's] overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of

conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelmingly the evidence may point in that direction. The trial court is thereby *barred from attempting to override or interfere with the juror's independent judgment in a manner contrary to the interests of the accused.*[1]

*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977). [Citations omitted and emphasis added.]

Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that "[a] verdict of acquittal ... could not be reviewed, on error *or otherwise*, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.

*Id.* at 571, 97 S.Ct. at 1354 (*quoting United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). [Emphasis added.]

The United States Supreme Court has repeatedly recognized the *"unreviewable* power of a jury to return a verdict of not guilty for impermissible reasons." *Harris v. Rivera*, 454 U.S. 339, 346, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981). [Emphasis added.] *See also United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984); *Standefer v. United States*, 447 U.S. 10, 22–23, 100 S.Ct. 1999, 2007–08, 64 L.Ed.2d 689 (1980). "That the verdict [of acquittal] may have been the result of compromise, or of a *mistake* on the part of the jury, is possible. But verdicts [of acquittal] cannot be upset by speculation *or inquiry* into such matters." *Dunn v. United States*, 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932). [Emphasis added.] *See also Powell*, 469 U.S. at 66, 105 S.Ct. at 477 ("burden of the exercise of lenity falls only on the Government").

In cases involving inconsistent verdicts on multiple counts, the rule has long been that neither the defendant nor the prosecution may use the inconsistency to impeach the verdict.[2] *Dunn*, 284 U.S. at 393, 52 S.Ct. at 191. This rule abides even in cases such as the present one, where the jury is told that they may not return an acquittal on the predicate charge while convicting on the compound charge. *Powell*, 469 U.S. at 68–69, 105 S.Ct. at 478–79 (reaffirming, as "without exception," the rule in *Dunn*).

It does not matter that the "challenge" to the verdict of acquittal in this case was made by the trial judge or that it was made before a judgment of acquittal was entered. The "unreviewable power" of the jury to render verdicts of acquittal—even in cases where the trial court believes there to be "no question that the defendant committed the offense," *supra* note 1,—would be a farce if the trial court could thwart

---

**1.** On Peters' renewed motion for judgment of acquittal, the trial court expressed its reasons for rejecting the jury's initial verdict:

The evidence in this case was strong. *There's no question in anyone's mind, I don't believe, that the defendant was—committed the offense of assault against the victim.* The jury returned—did return its verdict under Count I of not guilty and verdict under Count II of guilty.... At that time, the Court refused to accept the verdict. My initial impression was they were inconsistent.

Tr. 299–300. [Emphasis added.] This statement indicates that it was not the *inconsistency* of the verdicts that troubled the trial court, but rather the fact that, in the trial court's estimation, the verdict of acquittal was *against the weight of the evidence.* I trust I need not cite authority in order to condemn such a practice.

**2.** Missouri courts have, with the exception of *State v. Staten*, 478 S.W.2d 265 (Mo.1972), followed the *Dunn* rule at every opportunity. *See*

*State v. Clemons*, 643 S.W.2d 803, 805–806 (Mo. banc 1983); *State v. Thompson*, 610 S.W.2d 629, 637 (Mo.), *cert. denied*, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 122 (1981); *State v. Amerson*, 518 S.W.2d 29, 32–33 (Mo.1975).

The one case in which this Court refused to apply the rule in *Dunn* was *Staten.* As discussed in Section V, *infra*, *Staten* held that an acquittal on an underlying offense necessarily precluded a conviction on that compound offense where the *legislature* has made a conviction on that compound offense *dependent* upon a conviction of the underlying felony. *Id.* at 266. The Court in *Staten* recognized, as the majority does not, that where the jury returns inconsistent verdicts in such cases, double jeopardy requires that the acquittal be given effect and that the conviction may not be used to impeach that acquittal. *Id.* (applying *Cline* and *Collins*). *See* Section V, *infra*.

the jury simply by refusing to accept the verdict.

In subjecting the jury's unanimous verdict of acquittal, unambiguous in form and proper on its face, to a test of "consistency," the trial judge violated the rule that verdicts of acquittal may not be reviewed in any manner. *Ball*, 163 U.S. at 671, 16 S.Ct. at 1195; *Martin Linen*, 430 U.S. at 571, 97 S.Ct. at 1355. *See also Bullington v. Missouri*, 451 U.S. 430, 445, 101 S.Ct. 1852, 1861, 68 L.Ed.2d 270 (1981) ("verdict of acquittal on the issue of guilt or innocence is, of course, *absolutely* final"). [Emphasis added.]

In ordering the jury to continue its deliberations, the trial judge interfered with, and was successful in overriding, the jury's "independent judgment in a manner contrary to the interest of the accused." *Martin Linen*, 430 U.S. at 572–73, 97 S.Ct. at 1355–56. *See also Lowenfield v. Phelps*, 484 U.S. 231, 241, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988) ("criminal defendant ... being tried by a jury is entitled to the *uncoerced* verdict of that body"). [Emphasis added.]

If we are to honor the role of the jury in our system of justice, the jury's verdict acquitting Peters of assault must be given effect. In failing to honor that verdict, and by directing the jury to reconsider his guilt or innocence on that charge, the trial court violated Peters' federal constitutional right to be free from being twice put in jeopardy for a single crime.

## II.

In addition to being proscribed by the federal constitution, I believe the trial court's actions in this case violated Article I, Section 19, of the Missouri Constitution, which prohibits any persons from being "put again in jeopardy of life or liberty for the same offense, *after being once acquitted by a jury.*" [Emphasis added.] The unequivocal text of the Missouri Constitution expresses Missouri's commitment to the core protection of the Double Jeopardy Clause: the state may not force a defendant to answer a charge upon which he has already been acquitted by a jury. With respect, I believe that the majority sanctions a violation of that principle in this case.

Until today, the rule in Missouri has been that a jury's verdict of acquittal may not be subverted in any way. In *State v. Bruffey*, 75 Mo. 389 (1882), this Court held that where a new trial is granted after the jury has returned a verdict of guilty on one count but of acquittal on another, the new trial must be limited to the count upon which the jury found the defendant guilty. This is because it could "hardly be questioned" that the verdict of acquittal could not be reopened. *Id.* at 392–93. Thus, it should come as no surprise that research reveals no Missouri case in which a defendant has been convicted of a charge upon which a jury had previously returned, in proper form, a unanimous verdict of acquittal.[3]

Article I, Section 19, of the Missouri Constitution focuses on whether the defendant has been acquitted of a particular crime by a jury. If he/she has, our constitution prohibits the state from subjecting the defendant to the possibility of a conviction for that same crime ever again. It is undisputed that the jury initially acquitted Peters of assault in this case. The jury tendered its unanimous verdict in proper form. By rejecting this verdict and, in effect, resubmitting the charge to the jury, the trial court placed Peters in *jeopardy* of a conviction

---

**3.** The only case that even suggests such an outcome is *State v. Akers*, 278 Mo. 368, 213 S.W. 424 (1919). There, the jury returned inconsistent verdicts in a two-count prosecution where both counts had charged the same crime. The Court held that Missouri's double jeopardy provision would not preclude a retrial of the defendant. *Id.* 213 S.W. at 425. As a later case makes clear, however, the *Akers* court was ordering only a retrial of the count on which the defendant had been found guilty. The jury's verdict of acquittal foreclosed the possibility of a retrial on the other count. *See State v. Linton*, 217 S.W. 874 (Mo.App.1920) (transferring case to Supreme Court, noting that *Akers* had held only that double jeopardy did not "bar a further prosecution under the count upon which the conviction was had"), *and State v. Akers*, 242 S.W. 660 (Mo.1922) (affirming, after remand, conviction on a single count, the other count having been dismissed "upon receiving the mandate of this Court").

for a crime "after being once acquitted by a jury" of that same crime. The trial court's decision is archetypical of the jeopardy against which the Missouri Constitution so clearly guards.

The majority would circumvent these constitutional protections by holding that "[a]n attempt by a jury to return a verdict which is not accepted by the trial judge is not a verdict." *Maj.Op.* at 349.[4] This Court has long resisted arguments requiring this type of "artful construction" of the Missouri Double Jeopardy Clause. "[T]he language of the Constitution is clear and unequivocal, and we know of no reason why it should not be construed as it reads." *State v. Linton,* 222 S.W. 847, 848–49 (Mo. 1920). Despite the majority's claims to the contrary, our double jeopardy protection does not turn on a *judgment* of acquittal; nor does it turn on a verdict that has been found to be *acceptable* by the trial court. Rather, our double jeopardy protections attach "after [the defendant is] once *acquitted by a jury.*" [Emphasis added.] Applying the plain language of the Constitution, it is clear that Peters was acquitted by this jury and that, once acquitted, Peters could no longer be made to answer the charge of assault.

III.

The majority's result is driven by its conviction that one of the jury's original verdicts—acquittal of assault and guilty of armed criminal action—was a "mistake" or an "error." *Maj.Op.* at 348, 349. The majority even goes so far as to suggest that these verdicts may have been the result of a scrivener's error in filling out the verdict forms. *Maj.Op.* at 348. It is entirely possible, however, that the verdicts rendered were exactly the dispositions to which the jury unanimously agreed. The subsequent guilty verdict on a lesser degree of assault, and the minimum sentence on that count, that the jury ultimately returned seem to indicate the jury's rather grudging departure from its original, and thus intended, disposition.

Unpersuaded, the majority concludes that the "only sure way to determine which verdict is accurate is to allow the jurors to resolve the inconsistency." *Maj.Op.* at 349. Even though I do not believe, on review of the cold record, that either of the original verdicts was a "mistake" in the sense that either was unintended, I agree with the majority that the only way to have been sure that the verdicts represented the

4. The majority cites three Missouri cases and one federal case for its conclusion that double jeopardy is not violated when the trial court rejects a jury's unanimous verdict of acquittal—even though it was proper in form and unambiguous on its face. *Maj.Op.* at 349. With respect, none of the majority's foundational precedents even involve verdicts of acquittal. *See State v. Lashley,* 667 S.W.2d 712, 715 (Mo. banc), *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984) (jury, following penalty phase of capital case, returned a handwritten verdict of death which was unenforceable in that it was phrased so as to indicate that the jury may have impermissibly shifted the burden of proof as to a particular aggravating circumstance to the defendant); *State v. Cline,* 447 S.W.2d 538 (Mo. banc 1969), *cert. denied,* 398 U.S. 910, 90 S.Ct. 1706, 26 L.Ed.2d 71 (1970) (jury found defendant guilty of burglarious stealing without returning *any* verdict on the underlying charge of burglary); *State v. Hurley,* 602 S.W.2d 838, 839–40 (Mo.App.1980) (single verdict of guilty could not be accepted as punishment assessed was patently illegal); *State v. Jones,* 583 S.W.2d 561, 562 (Mo.App.1979) (despite jury's vote to convict, jury foreman mistak-

enly signed and returned both the verdict forms for guilt *and* acquittal); *State v. Summers,* 501 S.W.2d 548, 550–51 (Mo.App.1973) (jury found defendant guilty of burglarious stealing without returning *any* verdict on the underlying charge of burglary); *United States v. Hiland,* 909 F.2d 1114, 1136–38 (8th Cir.1990) (verdict of guilty rejected when court noted that instructions erroneously failed to require jury unanimity as to the method in which the crime was committed).

·Indeed, the only two Missouri cases to address situations similar to the present case held that the jury's verdict of acquittal must be respected. *See* Section IV, *infra (discussing State v. Watson,* 816 S.W.2d 683, 687–88 (Mo.App. 1991) (verdict of acquittal must be respected and forecloses the need for a verdict on the dependent offense of armed criminal action), and *State ex rel. Pruitt v. Adams,* 500 S.W.2d 742 (Mo.App.1973) (verdict of acquittal on the charge of burglary must be respected and forecloses the need for a verdict on the dependent offense of burglarious stealing)). As the only relevant authority in this state reaches conclusions directly contrary to that desired by the majority, the majority overrules where it cannot outreason. *Maj.Op.* at 348.

unanimous intentions of the jurors would have been to ask them.

Where the majority's analysis derails, however, is in its conclusion that "the safest and most accurate way to resolve the ambiguity is *to resubmit both counts* to the jury and find out for sure which verdict is the one the jury intends." *Maj.Op.* at 348. [Emphasis added.] As explained in Sections I and II, *supra,* such a course ignores the constitutional rights of the defendant and, by extension, society's interest in preserving the jury's unreviewable power to return verdicts of acquittal.

If the majority is correct and the trial court's concern was that one of the original verdicts may have been "unintended" and not just that the verdict of acquittal was against the weight of the evidence, *see supra,* note 1, then Rule 29.01(d) provides the only authorized and constitutional means available to determine the jury's intent.

> When a verdict is returned and before it is recorded the jury shall be *polled* at the request of any party *or upon the court's own motion.* If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged.

Rule 29.01(d). [Emphasis added.] Here, neither the State nor the defendant nor the trial court availed themselves of this remedy. Where a poll is not sought, it is waived, *State v. Hubbs,* 242 S.W. 675, 677 (Mo.1922), and the unanimity of the verdict can no longer be questioned.

Thus, the majority's assertion is plainly incorrect. The "safest and most accurate way" to have determined the jury's intent as to its original verdicts would have been to conduct a poll. This would not only have been "safe and accurate," it would have had the additional value of respecting the defendant's state and federal constitutional rights. To countenance, as the majority has, the trial court's unconstitutional approach while the lawful mechanism made available by the Rules went untried, is unconscionable. Therefore, I respectfully dissent.

## IV.

There remains the question whether the jury's verdict of guilty on the charge of armed criminal action can stand in the face of the acquittal of the underlying crime. The answer to this question turns upon whether the legislature intended armed criminal action as a dependent or independent offense.

Missouri has had an armed criminal action statute since 1927. *See* Laws of Mo. 1927, p. 173. As originally enacted, the statute applied to "any person ... *convicted* of committing a felony ... while armed with a pistol or any deadly weapon." *Id.* [Emphasis added.] The statute provided that "the punishment elsewhere prescribed [for the underlying felony] ... shall be *increased* by ... two years." *Id.* [Emphasis added.] Thus, the offense was dependent in nature, applying only to cases in which the defendant is first found guilty of the underlying felony.

### A.

In 1976, the legislature amended the armed criminal action statute. *See* Laws of Mo.1976, p. 780, (codified originally at Section 559.225, RSMo Supp.1976, now Section 571.015, RSMo 1986). The legislature deleted the words "convicted of committing" and left in its stead the words "commits any felony". This Court read the new statute to convert armed criminal action from an enhancement statute to a statute creating a separate crime. *State v. Treadway,* 558 S.W.2d 646, 652 (Mo. banc 1977), *cert. denied,* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). *See also Sours v. State,* 593 S.W.2d 208 (Mo. banc) (*Sours I*) ("armed criminal action statute calls for conviction of a second crime and for the imposition of a second sentence"), *vacated on federal constitutional grounds,* 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820, *on remand,* 603 S.W.2d 592, 599 (Mo. banc 1980) (*Sours II*) (same), *cert. denied,* 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981). It was precisely this change that incited the flurry of double jeopardy litigation surrounding the application of the armed criminal action statute to cases in

which the use of a dangerous weapon was also an element of the underlying felony. *See State ex rel. Bulloch v. Seier*, 771 S.W.2d 71 (Mo. banc 1989), *cert. denied*, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990) (detailing this stream of litigation from *Treadway*, to *Sours*, to *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)).

Throughout this period of litigation, the focus fixed on whether the Double Jeopardy Clause of the United States Constitution prohibited a state legislature from prescribing multiple punishments for the same conduct. Despite the insistence of a bare majority of this Court to the contrary, the United States Supreme Court ultimately corrected our predecessors' errors. *Hunter*, 459 U.S. at 369, 103 S.Ct. at 679–80, holds that the Double Jeopardy Clause does not prohibit multiple punishments. Prior to this announcement, and following this Court's initial opinion in *Sours*, however, the law in Missouri was that a defendant could not be convicted of both armed criminal action and an underlying felony that required, as an element, that the defendant had committed the crime using a dangerous weapon.

In an attempt to reconcile its misreading of the Fifth Amendment with the statute, this Court held that in all cases in which the jury found the defendant guilty of both armed criminal action and an underlying felony, "uniformity with *Sours*" required that the armed criminal action conviction be reversed, rather than the underlying felony. *State v. Kane*, 629 S.W.2d 372, 377 (Mo. banc 1982), vacated on federal constitutional grounds, 459 U.S. 1193, 103 S.Ct. 1172, 75 L.Ed.2d 424 (1983). The *Sours* "logic" began to wrap around itself, pretzel-like, as the Court tried to remain consistent with its difficult precedent. Thus, this Court held that armed criminal action and the underlying felony should be submitted to the jury only as alternatives. *State ex rel. Westfall v. Ruddy*, 621 S.W.2d 42 (Mo. banc 1981). And, in *State v. Lewis*, 642 S.W.2d 627, 630–31 (Mo. banc 1982), this Court held that armed criminal action could be charged and submitted without charging or submitting the underlying felony.

The State relies on *Kane*, *Ruddy* and *Lewis* in arguing that Peters' conviction for armed criminal action can stand alone, his acquittal of the underlying felony notwithstanding. I believe this position is patently incorrect. *Kane*, *Ruddy* and *Lewis* must be read in light of the climate in which they were rendered, a climate made unnecessarily inclement to logical consideration of the armed criminal action statute by this Court's persistence in misapplying the United States Constitution.

### B.

How, then, should this question be resolved? It never hurts to start with the language of the statute when the intent of the legislature is at stake.

Section 571.015 provides, in pertinent part:

> [A]ny person who *commits any felony* under the laws of this state by, with or through the use, assistance, or aid of a dangerous instrument or deadly weapon *is also guilty* of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment ... for a term of not less than three years. The punishment imposed pursuant to this subsection shall be *in addition to* any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid or a dangerous instrument or deadly weapon.

Section 571.015(1), RSMo 1986. [Emphasis added.] The State construes this language as defining a separate, "stand-alone" crime. The State would permit a conviction for armed criminal action even though there is no conviction—in fact, even though there is an acquittal—on the underlying felony. The only support offered for this construction is the fact that, in 1976, the General Assembly changed the language from "convicted of committing" to "commits." Thus, the State's argument goes, no conviction on the underlying felony is required so long as the jury is required to find that the defendant "committed" that crime.

I disagree. Based on the words of the statute, I do not believe that one can be convicted of armed criminal action unless one is "also" charged and convicted of the underlying felony. The fact that the state must separately charge a violation of Section 571.015 does not also mean that armed criminal action stands alone as an independent crime. Rather, the plain language of the statute contemplates that there will "also" be a conviction on the underlying felony whenever a jury returns a guilty verdict for armed criminal action. Most obviously, the first sentence of the statute sets out the element—use of a weapon—which, if present, will result in finding that the defendant "is also guilty" of armed criminal action. The "also" can only refer to a preliminary finding of guilt on the underlying felony.

If this is not enough to show that the legislature intended only to define a separate, but dependent, crime, the use of the word "commits" in the opening phrase must be read in light of the use of that word in the next sentence. The statute commands that any sentence imposed for armed criminal action "shall be in addition to" the punishment for the crime "committed" with the dangerous weapon. Again, the statute contemplates a conviction on the underlying felony as a precondition to a conviction for armed criminal action.

Reading the statute to define a separate, but dependent, crime is consistent with the reading this Court has given this statute since its enactment. "The armed criminal action statute calls for conviction of a *second* crime and for the imposition of a *second* sentence." *Sours I*, 593 S.W.2d at 216. [Emphasis added.] *See also Sours II*, 603 S.W.2d at 599 (same). This, we held, is the "plain meaning of the words, and it is the unmistakable intent of our General Assembly." *Sours II*, 603 S.W.2d at 599. Insofar as *Lewis* varies from this interpretation, it should be abandoned as wholly attributable to the mistaken constitutional analysis in *Sours*.

The plain language of Section 571.015 requires, before Peters can be convicted of armed criminal action in this case, that he be convicted on the underlying assault charge. In my view, Peters' acquittal on the assault charge forever bars a conviction on the separate, but dependent crime of armed criminal action. *Cf. Bulloch*, 771 S.W.2d at 75.

### C.

Even were Peters' conviction of armed criminal action not barred by the plain language of the statute, the instructions as given in this case incorporated the *Sours* reading of Section 571.015 and unambiguously required the jury not to consider Peters' guilt or innocence on the armed criminal action count unless it first had convicted him of assault. The armed criminal action verdict directors (Inst. Nos. 7–8) track the language of the statute as follows:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that the defendant *committed* the offense of Assault in the [First/Second] Degree, as submitted in instruction No. [5/6] [the verdict directors for Count I, assault], and

Second, that defendant *committed* that offense with the use of a dangerous instrument,

then you will find defendant guilty under Count II of Armed Criminal Action.

[Emphasis added.] Any argument that "committed," as used in these instructions, means that a conviction on the underlying felony is not required is foreclosed by the following warning appearing on the verdict forms for armed criminal action:

Unless you have found the defendant guilty of Assault in the [First/Second] Degree as submitted in Instruction No. [5/6], *you may not* complete this verdict finding the defendant guilty of armed criminal action as submitted in Instruction No. [7/8].

[Emphasis added.] This warning is required in cases such as this one, *MAI–CR 304.48*, for the express purpose of "prevent[ing] the jury from returning a verdict of guilty of armed criminal action without finding the defendant guilty of the 'under-

lying' felony upon which it is based." *Id.* (Notes on Use, p. 304–85, para. 3). Admittedly, the warning failed in this case, but the jury was clearly instructed not to do what it did. In light of the acquittal on the assault charge, the jury's guilty verdict on the armed criminal action charge must be disregarded.

### V.

The majority relies heavily on *State v. Lashley,* 667 S.W.2d 712 (Mo. banc), *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984), in support of its conclusion that (1) it was the *"duty* of the trial court to refuse to accept [these verdicts] and require further deliberations until a verdict in proper form is returned," and that (2) the return of a verdict in improper form and the refusal by the trial court to accept it "is not a situation which places a defendant in double jeopardy." *Maj.Op.* at 348–349, 350 (*quoting Lashley,* 667 S.W.2d at 715). I believe that the majority reads *Lashley* too broadly and ignores a critical distinction between *Lashley* and the present case; a distinction which, in my view, compels a different result.

### A.

In *Lashley,* following the penalty phase of a capital murder case, the jury returned a handwritten verdict assessing the death penalty.[5] This verdict was phrased in such a way as to suggest that the jury may have impermissibly shifted the burden of proof to the defendant with respect to the presence of a particular aggravating circumstance. *Lashley,* 667 S.W.2d at 715. As such, the verdict was plainly defective and *could not* constitutionally have been given effect. Therefore, the Court affirmed the decision of the trial court to direct the jury to reconsider its sentencing verdict. *Id.* As quoted by the majority in the present case, the *Lashley* Court based its holding on the fact that

[t]he law is clear that when a jury returns a verdict *in improper form,* it is the *duty* of the trial court to refuse to accept the same and require further deliberations until a verdict *in proper form* is returned.

*Maj.Op.* at 348–349 (quoting *Lashley,* 667 S.W.2d at 715) (underlining added, italics in *Lashley* ). The *Lashley* Court noted *eight* times in its short, two-paragraph, eight-sentence discussion, that the defect in the jury's verdict was one of *form;* the illegality and, thus, ineffectiveness of the verdict was readily apparent on its face. *Lashley,* 667 S.W.2d at 715. If the Court's plain language is not enough to demonstrate the narrow holding of *Lashley,* the two cases cited there by the Court confirm that the "duty" to reject a jury's verdict applies to verdicts that are defective *on their face. Id. (citing State v. Helm,* 624 S.W.2d 513, 519 (Mo.App.1981) (guilty verdict and term of punishment were inconsistent and, therefore, verdict was properly rejected as "defective"), and *State v. Hurley,* 602 S.W.2d 838, 840 (Mo.App.1980) (guilty verdict properly rejected as "defective" where punishment assessed was illegal on its face)). *See also State v. Wood,* 355 Mo. 1008, 199 S.W.2d 396, 398 (1947) (same).

Thus, *Lashley* stands only for the proposition that the trial court must reject verdicts of guilt that are, on their face, defective and unenforceable. By applying *Lashley* to the present case, the majority ignores the fact that the verdict rejected here was a verdict of *acquittal,* proper in form and enforceable on its face. The only "irregularity" in that verdict is the majority's inability to reconcile it, as a logical matter, with the verdict of guilt on the armed criminal action charge. The majority relies on *State v. Cline,* 447 S.W.2d 538 (Mo. banc 1969), *cert. denied,* 398 U.S. 910 (1970), to bridge this gap between the present case and *Lashley.*[6]

---

5. Verdicts of death/life in capital cases are, for purposes of double jeopardy, analytically comparable to verdicts of guilt/innocence. *See Bullington,* 451 U.S. at 445–46, 101 S.Ct. at 1861–62.

6. The majority also cites, in addition to *Cline, State v. Hurley,* 602 S.W.2d 838 (Mo.App.1980) and *State v. Jones,* 583 S.W.2d 561 (Mo.App. 1979). *Hurley,* as previously discussed, *supra,* note 4, is of no value to the majority as it involved only a single guilty verdict which was

*Cline* involved a prosecution for burglary and for burglarious stealing.[7] The jury returned a verdict of guilty on the burglarious stealing charge but returned *no* verdict on the charge of burglary. The Court held that the trial court should not have accepted the verdict. *Cline*, 447 S.W.2d at 543. Holding that a verdict of guilt on the burglary charge was a necessary predicate to the jury's verdict of guilt on the charge of burglarious stealing, the Court held that the trial court should have "sent the jury back for the purpose of making an express finding on the charge of burglary or bringing in some verdict permissible under the instructions." *Id.*

The critical distinction between *Cline* and the present case is that, in *Cline*, the jury had not returned a verdict of acquittal on any charge; in the present case, Peters stood acquitted by the jury on the charge of assault. Therefore, *Cline* is consistent with *Lashley* in holding that the court may not accept an adverse verdict that is defective, and thus unenforceable, on its face. While the jury's initial verdicts in this case may be logically inconsistent, the jury tendered the acquittal in proper form; that form unambiguously represented the unanimous vote of the jury finding Peters not guilty of assault.

## B.

The majority—bent on refashioning *Lashley* in order to hold that the trial court has a "duty" to reject verdicts of acquittal that do not square with the evidence or other verdicts—has missed the wisdom of *Cline* and its progeny. Close reading of these cases reveals the analysis that I respectfully suggest ought to have been used to resolve this case.

In *Cline*, the Court held:

Stealing in connection with a burglary is a specific kind of offense which the general assembly has constituted a felony and for which it has provided a penalty to be assessed *in addition* to the punishment for burglary. A finding of burglary by the jury is an indispensable prerequisite to a verdict of guilty for stealing in connection with the burglary.

*Cline*, 447 S.W.2d at 543. [Emphasis in original.] The Court noted that the prosecutor could separately charge the crimes, but if, in seeking the higher potential penalties available for burglarious stealing, "he elects to proceed under Section 560.-110, he has chosen to make the stealing a dependent offense," predicated on gaining a conviction for the underlying burglary. *Id.* at 539. Faced with only a partial verdict, and lacking the conviction for burglary that is indispensable to a conviction for burglarious stealing, the Court held that the trial court should have "sent the jury back for the purpose of making an express finding on the charge of burglary or bringing in some verdict permissible under the instructions." *Id.* at 543–44. The Court specifically noted that the *absence of an acquittal* on the burglary charge enabled a remand for a new trial without violating double jeopardy. *Id.* at 544.

*State v. Collins*, 465 S.W.2d 576 (Mo. 1971), and *State v. Staten*, 478 S.W.2d 265 (Mo.1972), quickly followed *Cline*. In *Collins*, the Court faced the same situation as in *Cline* except that, in *Collins*, the jury had expressly acquitted the defendant of burglary while convicting him of burglarious stealing. *Id.* at 576. There, the Court

---

invalid on its face. *Hurley*, 602 S.W.2d at 840. Similarly, *Jones* is, by the majority's own parenthetical, inapplicable as it involved the return of a verdict of acquittal and a verdict of guilty *on the same count. See Maj.Op.* at 348.

**7.** Prior to the enactment of the Criminal Code in 1977, Section 560.110, RSMo 1968 (entitled "Joint prosecution for burglary and stealing) (repealed January 1, 1979), provided that the crime of burglary could be prosecuted in the same count as the crime of stealing where the

stealing occurred in the course of the burglary. This section was held to have defined a separate crime: burglarious stealing. *State v. Auger*, 434 S.W.2d 1, 5 (Mo.1968). With the advent of the Criminal Code, and the changes in definition of, and punishment for, burglary, the legislature dropped the distinction between stealing during the course of a burglary and otherwise. *See* Section 570.030, RSMo 1986; Section 570.030, V.A.M.S. (1979) (Comment to 1973 Proposed Code, p. 447).

noted again the fact that it was only the *absence of a verdict of acquittal* that allowed the retrial in *Cline.*

There is no such failure in the verdict in this case. It is clear that the jury acquitted defendant of the burglary; his stealing conviction therefore cannot stand, and the appellant is entitled to outright reversal and discharge.

*Id.* at 578.

Similarly, in *Staten*, the jury convicted the defendant of burglarious stealing but acquitted him of the underlying burglary. Again, the Court applied *Cline* and *Collins* and held that "burglary is a constituent element of a stealing charge under (Section 560.110) and a jury verdict such as this is not merely inconsistent. It shows conclusively that the jury has failed to find a constituent element of the offense and therefore it cannot stand." *Staten*, 478 S.W.2d at 266. The Court reversed defendant's conviction for burglarious stealing and discharged the defendant.

Then, in 1973, the court of appeals decided *State ex rel. Pruitt v. Adams*, 500 S.W.2d 742 (Mo.App.1973), a case so similar to the present one that the majority, on the way to its result, was compelled to overrule it. *Maj.Op.* at 348. There, just as in *Cline*, the jury first returned only a verdict of guilty on the dependent offense of burglarious stealing. *Adams* at 743. The trial court ordered the jury to retire and reread the instructions. As in *Collins* and *Staten*, the jury returned with verdicts of guilty on the charge of burglarious stealing and acquittal on the charge of burglary. *Id.* The trial court again ordered the jury to re-deliberate, after which the jury returned verdicts of guilty on both counts. *Id.* The court, on writ of prohibition, held that the trial court had exceeded its jurisdiction by rejecting the verdict of acquittal and sending the jury back a second time. *Id.* "The burglary verdict form was clear on its face, and determined that, upon the facts submitted, relator was not guilty of burglary." *Id.* As in the present case, the argument was made that the trial court must reject verdicts in "improper form."

The court dismissed these as "readily distinguishable." *Id.*

[W]e believe that when the jury returned the second time with the verdict forms finding the defendant not guilty of burglary and guilty of burglarious stealing, the respondent should have accepted the verdict forms. Relator, having been declared by the jury as not guilty of burglary could not have been found guilty of burglarious stealing.

*Id.* at 755. Thus, the trial court was ordered to discharge the defendant. *Id.*

Finally, the analysis of *Cline, Collins* and *Adams* was adopted by the court of appeals recently to resolve the precise situation presented here. In *State v. Watson*, 816 S.W.2d 683 (Mo.App.1991), the jury returned verdicts of guilty of armed criminal action but not guilty of the underlying felony, kidnapping. The trial court rejected these verdicts as inconsistent and the jury ultimately returned guilty verdicts on both counts. The court of appeals held this error, stating:

Here, the initial verdict of not guilty of kidnapping was clear on its face and was in proper form. The inconsistency noted by the respected trial judge arose only when this verdict was considered in conjunction with the guilty verdict for armed criminal action. It is clear from the instructions that a verdict of guilty of kidnapping was an indispensable prerequisite to a finding of guilty of armed criminal action in connection with the kidnapping.

\* \* \* \* \* \*

The trial court erred in not accepting the verdict of "NOT GUILTY" of kidnapping thereby rendering the armed criminal action conviction a nullity.

*Id.* at 687–88.

The parallels between the present case and *Collins, Staten* and especially *Adams* are too strong to ignore. Armed criminal action, as previously discussed, is no less dependent upon a conviction on the underlying felony than was burglarious stealing dependent upon a conviction on the underlying burglary. In both schemes, an acquittal of the predicate offense precludes a

conviction on the compound offense and, because of double jeopardy protections, precludes a retrial on either charge. *Adams* holds, and *Watson* correctly follows, that the jury's power to acquit—for whatever reason or no reason at all—cannot be thwarted simply by refusing to accept a verdict of acquittal, tendered in proper form, whenever it "doesn't make sense."

The teachings of *Lashley, Cline, Collins, Watson, Adams* and *Staten* seem to me compelling when compared to the silence of relevant precedent supporting the majority's position. Moreover, these cases have the additional virtue of honoring the constitutional restraints under which the majority appears to grow restless and chafe. Our discomfort, however, is an insufficient basis for casting off the limitations imposed by the state's organic document. We are, after all, a court of law. Or so we claim.

### VI.

For the reasons discussed above, I believe that the trial court violated state and federal double jeopardy protections by rejecting the jury's unanimous verdict of acquittal. I would reverse the convictions and order the defendant discharged.