**STATE of Missouri, Respondent,**

v.

**Terrell PATTERSON, Appellant.**

**No. 23033.**

Missouri Court of Appeals,
Southern District,
Division One.

April 11, 2000.

Application to Transfer to Supreme
Court Denied May 3, 2000.

Application for Transfer Denied
May 30, 2000.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Jefferson City, for Respondent.

CROW, Presiding Judge.

Appellant was tried by jury on four criminal charges:

Count I: assault in the first degree, § 565.050,[1] by knowingly causing serious physical injury to Arthur Duncan.

Count II: armed criminal action, § 571.015, by committing the crime in Count I with a deadly weapon.

Count III: murder in the first degree, § 565.020, by knowingly causing the

---

1. References to statutes are to RSMo 1994.

death of Joyce Patterson after deliberation.

Count IV: armed criminal action, § 571.015, by committing the crime in Count III with a deadly weapon.

The jury presented the trial court a set of verdicts which the court rejected. After a sequence of events set forth *infra*, the jury returned a set of verdicts which the court accepted. In that set, the jury found Appellant guilty as charged in all four counts.

Later, upon denying Appellant's timely motion for new trial, the court sentenced Appellant to: life imprisonment on Count I; life imprisonment on Count II, consecutive to the sentence on Count I; life imprisonment without eligibility for probation or parole on Count III, consecutive to the sentences on Counts I and II; life imprisonment on Count IV, consecutive to the sentences on Counts I, II and III.

Appellant's sole claim of error arises from the events that began when the jury presented its first set of verdicts. Because Appellant does not challenge the sufficiency of the proof to support the eventual guilty verdicts, only an abbreviated account of the evidence is necessary.

Viewed favorably to the result below, *State v. Ervin*, 979 S.W.2d 149, 159[14] (Mo. banc 1998), *cert. denied*, 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999), the evidence established that on August 5, 1998, Appellant drove to the home of Arthur Duncan and shot him with a handgun. Appellant then drove to the residence of Joyce Patterson (Appellant's wife)[2] and shot her with the same gun. She died as a result of the shooting. Duncan survived, but sustained serious physical injuries.

Four jury instructions are pertinent to Appellant's claim of error.

Instruction 11 submitted Count III.

Instruction 13 told the jurors that if they did not find Appellant guilty of murder in the first degree, they must consider whether he is guilty of murder in the second degree.

Instruction 14 submitted Count IV. It hypothesized Appellant used a deadly weapon in committing murder in the first degree as submitted in Instruction 11.

Instruction 15 also submitted Count IV. It hypothesized Appellant used a deadly weapon in committing murder in the second degree as submitted in Instruction 13.

The trial court supplied the jury twelve blank verdict forms—one for each possible verdict authorized by the instructions.

After deliberating about an hour and twenty minutes, the jury presented four verdict forms to the trial court.

The record indicates the first verdict form was signed by the foreman. It showed the jury found Appellant guilty of assault in the first degree and assessed punishment at "life in prison without parole or probation." In a discussion in chambers outside the presence of the jury, the prosecutor and Appellant's lawyer agreed with the trial court that the phrase "without parole or probation" was "surplusage."

The second verdict form, like the first, was signed by the foreman. The second form showed the jury found Appellant guilty as charged in Count II and assessed punishment at life imprisonment. The trial court said the verdict "appears to be acceptable." Neither the prosecutor nor Appellant's lawyer disagreed.

The third verdict form was also signed by the foreman. It showed the jury found Appellant "guilty of second degree murder" and assessed punishment at life imprisonment. The trial court remarked, "It seems to be a permissible verdict." The prosecutor and Appellant's lawyer agreed.

This court divines from the record that the fourth verdict form presented by the jury was the one to be used for Count IV if the jury (a) found Appellant guilty of murder in the *first* degree as submitted in

---

**2.** Appellant and Joyce were living apart; she had filed an action to dissolve their marriage.

Instruction 11, and (b) found Appellant used a deadly weapon as hypothesized in Instruction 14. The fourth verdict form was not signed. However, it showed the jury assessed punishment at life imprisonment.

Recognizing that the fourth verdict form should have been used only if the jury found Appellant guilty of murder in the *first* degree, and that the third verdict form had shown the jury found Appellant guilty of murder in the *second* degree, the trial court stated: "[E]ven if [the fourth verdict form] were signed, it would not be a permissible verdict. Therefore, the jury needs to be instructed by some means to reconsult its instructions and deliver an acceptable verdict upon Count IV[.]"

Appellant's lawyer responded: "Judge, I'd just like to ask that Counts I, II, III, that they've already signed properly, that those being accepted by the Court and they just be referenced as to Count IV as to re-looking at that."

The prosecutor replied that the jury "did not return a complete verdict."

After further dialogue, the trial court and the lawyers returned to the courtroom. There, the court told the jury:

"Ladies and gentlemen, as to Count IV, your verdict is not in a complete and acceptable form. Please return to your room, endeavor to reach verdicts upon Count IV, and read the instructions upon the verdict forms."

The jury thereupon returned to the jury room. Six minutes later, the jury reentered the courtroom. The only record of what occurred is a notation in the transcript that the trial court and counsel held an "off the record" discussion.[3] At the conclusion of the discussion, the trial court told the jurors to "return to your room again and consider Count IV and carefully read the instructions contained on the ver-

dict forms upon the forms relating to Count IV."

Some fourteen minutes later, the bailiff—at the trial court's direction—brought the instructions and verdict forms from the jury room to the courtroom.[4] There, the court and the lawyers examined the verdict forms. The court announced:

"[T]he Court now finds that the verdict form completed upon Count IV is in a proper order. The first time the jury sent the packet of instructions out, it had signed a verdict form indicting that it found the Defendant guilty of second degree murder. It has now erased that signature and signed the first degree murder verdict form indicating that it finds the Defendant guilty of first degree murder."

The trial court gave the lawyers an opportunity to comment.

Appellant's lawyer said:

"Judge, we would renew the earlier motion that we made back in chambers for the Court to accept the verdicts as to I, II and III when the verdict as to III was murder in the second degree, because those verdicts were in the proper form at the time. . . . I think for the Court . . . to now accept a verdict of murder in the first degree is a violation of my client's double jeopardy rights under the 4th [sic] and 15th [sic] Amendments to the United States Constitution. As they came back before, Verdicts I, II and III were in proper form. It was Verdict IV that was not in proper form. So we would move that the Court accept the earlier verdict as to Count III of murder in the second degree. . . . [T]he Court's instructions were for them to adjust Count IV and they've not followed that instruction of the Court. They've changed Count III. . . . If the Court's

---

**3.** Appellant's motion for new trial avers that on this occasion, the verdict form for Count IV displayed the foreman's signature. Although the record is silent about that, the State's brief agrees that the jury "returned the same verdicts as it had initially but signed the

verdict form as to Count IV when it returned the second time."

**4.** This court infers from the transcript that the jury had indicated to the bailiff that it had completed its verdicts.

denying our request to accept the verdicts as to the earlier Count III, verdict of murder in the second degree, we would request, in the alternative, for a mistrial."

The trial court denied the request for mistrial.

The bailiff then escorted the jury to the courtroom where the trial court read four verdicts aloud.

The first verdict was the same as the one the jury originally presented on Count I. The second verdict was the same as the one the jury originally presented on Count II.

The third verdict was:

"As to Count III, we the Jury, find the defendant, TERRELL PATTERSON, guilty of MURDER IN THE FIRST DEGREE, as submitted in Instruction No. 11.

We assess and declare the punishment for MURDER IN THE FIRST DEGREE at: Imprisonment for life without the eligibility for probation or parole."

The fourth verdict was:

"As to Count IV, we the Jury, find the defendant, TERRELL PATTERSON, guilty of ARMED CRIMINAL ACTION, as submitted in Instruction No. 14.

We assess and declare the punishment for ARMED CRIMINAL ACTION at: Life imprisonment[.]"

All four verdicts were signed by the foreman.

The trial court polled the jury on each verdict. Every juror confirmed each verdict was his (or hers).

The trial court accepted the verdicts and discharged the jury.

■ Appellant's sole point relied on:

"The trial court erred in a) refusing to accept the jury's second degree murder verdict; 2) requiring the jury to further deliberate on all counts after it had acquitted Mr. Patterson of the greater offense of first degree murder when it found him guilty of this lesser offense; 3) accepting the subsequent first degree murder verdict; 4) overruling Mr. Patterson's request for a mistrial; and plainly erred in 5) failing to advise the jury in writing what verdicts were supposedly inconsistent and by not submitting a new set of verdict forms for those verdicts, pursuant to MAI–CR3d 312.06, because these actions and omissions allowed and possibly coerced a first degree murder conviction, violating Mr. Patterson's rights to due process of law and to not be placed in double jeopardy, U.S. Const., 5th and 14th Amends.; Mo. Const., Art. I, § 19, in that when the jury returned its second degree murder verdict, Mr. Patterson was acquitted of first degree murder, and since that verdict was in proper form it should have been accepted; instead, the trial court twice orally ordered the jury to continue deliberations, putting Mr. Patterson again in jeopardy for first degree murder after he had already been acquitted of that charge, without giving the jury the required written guidance as to the perceived problem, and resulted in the jury changing its verdict to first degree murder."

■ Appellant correctly declares that conviction of a lesser included offense implicitly acquits an accused of the greater offense. *State v. Moseley,* 735 S.W.2d 46, 48[5] (Mo.App. W.D.1987); *Shopbell v. State,* 686 S.W.2d 521, 523[5] (Mo.App. W.D.1985); *Ray v. State,* 532 S.W.2d 478, 482[8] (Mo.App.1975).

Relying on that rule, Appellant maintains: "The guilty verdict for second degree murder initially returned by the jury as to Count III constituted an outright acquittal of ... first degree murder." Consequently, argues Appellant, the trial court erred in accepting the jury's later verdict finding Appellant guilty of murder in the first degree. According to Appellant, when the trial court required the jurors to deliberate further about Count III after they presented the initial set of verdict forms, the

court "twice put [Appellant] in jeopardy for the first degree murder conviction that he had been implicitly acquitted of, in violation of his state and federal constitutional rights."

The State, citing *State v. Lashley*, 667 S.W.2d 712, 715[3] (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984), insists that when a jury returns a verdict in improper form, it is the trial court's duty to refuse to accept it and require further deliberation until a verdict in proper form is returned.

The State emphasizes that the fourth verdict form initially presented by the jurors showed they found Appellant guilty of armed criminal action as submitted in Instruction 14. That was the instruction hypothesizing Appellant used a deadly weapon in committing murder in the first degree. The State points out that the fourth verdict form contained this caution: "Unless you have found the defendant guilty of murder in the first degree as submitted in Instruction No. 11, you may not complete this verdict finding the defendant guilty of armed criminal action as submitted in Instruction No. 14." Consequently, reasons the State, the third and fourth verdict forms initially presented by the jury were inconsistent, hence the trial court had a duty to reject them and require the jury to deliberate until proper verdicts were returned.

A case similar to, but not identical with, the instant case is *State v. Peters*, 855 S.W.2d 345 (Mo. banc 1993), *cert. denied*, 510 U.S. 1075, 114 S.Ct. 887, 127 L.Ed.2d 81 (1994). There, the trial court submitted the case to the jury by instructions hypothesizing: assault in the first degree, armed criminal action with assault in the first degree as the underlying felony, assault in the second degree, and armed criminal action with assault in the second degree as the underlying felony. *Id.* at 347. To convict the accused of armed criminal action, the instructions required a finding of guilt on one of the assault charges. *Id.*

The jury in *Peters* returned a verdict of not guilty of assault but guilty of armed criminal action with assault in the second degree as the underlying felony. *Id.* The judge refused to accept the verdicts because the accused could be found guilty of armed criminal action only if first found guilty of the underlying felony. *Id.* The jury ultimately returned verdicts of guilty of assault in the second degree and guilty of armed criminal action with assault in the second degree as the underlying felony. *Id.*

On appeal, the accused maintained that the initial finding of not guilty of assault acquitted him of all assault charges and armed criminal action. *Id.* Consequently, argued the accused, the judge subjected him to double jeopardy by requiring the jury to deliberate further. *Id.*

The Supreme Court of Missouri disagreed, saying:

"We hold that the first two verdicts the jury attempted to return were inconsistent because if the defendant was not guilty of assault, he cannot be guilty of armed criminal action based on assault. The court acted properly in sending the matter back to the jury for further consideration. In addition, we hold that the action of the court did not subject [the defendant] to double jeopardy."

*Id.* at 347–48[1].

*Peters* is analogous to the instant case in that the initial verdict in *Peters* acquitting the accused of assault was consistent on its face, just as the initial verdict form in the instant case finding Appellant guilty of murder in the second degree was consistent on its face.

The inconsistency in *Peters* arose only when the initial verdict on assault was considered with the initial guilty verdict on armed criminal action. Like *Peters*, the inconsistency in the instant case arose only when the initial verdict form on Count III was considered with the initial verdict form on Count IV. The former found Appellant guilty of murder in the second degree, while the latter found him guilty of

armed criminal action with murder in the first degree—not murder in the second degree—as the underlying felony.

*Peters* recognized a verdict could be consistent on its face but inconsistent when compared with another verdict. *Peters* explained:

"[I]n many situations in which there are inconsistent verdicts, each verdict will be consistent on its face; it is only when you consider them together that the inconsistency becomes apparent.... In the final analysis, the verdict is just a communication from the jury to the judge. If the verdict is ambiguous, the best way to clarify the message is to ask the sender of the message (the jury) what was meant. Whenever possible, the jury should be allowed to resolve the inconsistency.

Many times it is impossible to have any idea which verdict is correct and which is incorrect....

In a situation such as in the present case ... in which one of the verdict directors incorporates the elements of another charge by requiring a finding of guilty on the underlying charge, an argument can be made that since the verdict directors in effect require the jury to resolve the underlying charge first, it is safe to assume this is the correct verdict and that the second verdict is the incorrect one.... While this contention is not without merit, the assumption that the first count decided (the underlying felony) is correct is not necessarily valid. For example, the error may arise simply in the process of filling out the verdict forms, in which event either verdict could be the one intended by the jury. Since the jury is still present and the trial judge and attorneys are aware of the inconsistency and the inconsistent verdicts have not been accepted, the safest and most accurate way to

resolve the ambiguity is to resubmit both counts to the jury and find out for sure which verdict is the one the jury intends.

. . . .

There is nothing magical about an inconsistent verdict that is consistent on its face but is inconsistent because of some other verdict in the case. Trial judges are encouraged to make every effort to salvage an improper verdict by calling the jurors' attention to their mistake in failing to follow the jury instructions and giving them an opportunity to correct the mistake. The trial judge did exactly that. Peters was not tried twice on any count, and the double jeopardy clause has no application.

. . . .

An attempt by a jury to return a verdict that is not accepted by the trial judge is not a verdict. A verdict is not binding until the court accepts it and the jury is discharged. A trial court's refusal to accept an inconsistent verdict 'is not a situation which places a defendant in double jeopardy.' Consequently, Peters was not subjected to double jeopardy."

*Id.* at 348–50 (citations omitted).

This court finds *Peters* answers—and refutes—the first four complaints in Appellant's point relied on, i.e., clauses "a," "2," "3" and "4." Indeed, Appellant's position is weaker than that of the accused in *Peters*. There, the initial set of verdicts *acquitted* the accused of the underlying felony (assault). In the instant case, the initial verdict form for Count III found Appellant *guilty* of murder, but in a lesser degree than the eventual verdict on that count. Thus, in *Peters* the eventual verdict changed an apparent acquittal to a conviction, whereas the eventual verdict in the instant case simply elevated the degree of murder.[5]

---

5. Appellant endeavors to distinguish *Peters* by arguing that the initial verdicts there were "truly inconsistent" because the jury could not find the accused guilty of armed criminal action without finding him guilty of assault, whereas in the instant case a conviction of

murder in the second degree would support a conviction of armed criminal action. Appellant's argument, while resourceful, is unpersuasive. There was a patent inconsistency between the initial verdict form presented by the jury on Count III and the initial verdict

■ Apparently recognizing *Peters* is adverse to his position, Appellant maintains *Peters* "was incorrectly decided." That contention is not cognizable in this court, as this court is constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri. Mo. Const. art. V, § 2 (1945); *State v. Rulo*, 976 S.W.2d 650, 653[3] (Mo.App. S.D.1998).

■ The final complaint in Appellant's point relied on is clause "5." There, Appellant avers the trial court committed plain error in two respects: first, in failing to utilize MAI–CR 3d 312.06 to identify for the jury the verdicts which were inconsistent; second, in failing to supply the jury a new set of verdict forms for the inconsistent verdicts.

Appellant acknowledges his lawyer at trial[6] did not object to those omissions, hence any complaint about them may be barred by Rule 28.03.[7] That rule provides, *inter alia:* "No party may assign as error the ... failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

It is obvious, of course, that the omissions toward which Appellant directs his final complaint occurred *after* the jury initially retired to deliberate. Therefore, it may be arguable whether Rule 28.03 bars review of Appellant's final complaint.

However, this court need not decide that issue. That is because Appellant's final complaint does not appear in his motion for new trial. That omission renders the complaint ineligible for appellate review. *State v. Peterson*, 518 S.W.2d 1, 3[2] (Mo. 1974).

■ Accordingly, the only possible relief available to Appellant in regard to his final complaint is for plain error. In *State v. Isa*, 850 S.W.2d 876, 884[2] (Mo. banc 1993), the Supreme Court of Missouri explained:

"Plain error relief is appropriate only when the alleged error so substantially affects the rights of the defendant that a manifest injustice or miscarriage of justice results. Rule 29.12(b). The defendant bears the burden of showing that an alleged error has produced such a manifest injustice."

Any complaint by Appellant that the eventual verdict on Count III—guilty of murder in the first degree—was a manifest injustice or miscarriage of justice is refuted by the jurors' responses to the trial court's *sua sponte* poll on all four verdicts. Every juror unequivocally confirmed the verdict of guilty of murder in the first degree on Count III was that juror's verdict. Consequently, Appellant cannot demonstrate the trial court's failure to utilize MAI–CR 3d 312.06 warrants plain error relief.

Judgment affirmed.

PARRISH and SHRUM, JJ., concur.

---

form presented by the jury on Count IV. A verdict finding an accused guilty of murder in the second degree is inconsistent with a verdict finding him guilty of armed criminal action by committing murder in the first degree with a deadly weapon.

**6.** The lawyer representing Appellant in this appeal is not the lawyer who represented him at trial.

**7.** Rule 28.03, Missouri Rules of Criminal Procedure, has remained unchanged since July 1, 1995.