STATE of Missouri, Respondent,

v.

Neldon NEAL, Appellant.

No. SD 29529.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 10, 2010.

John D. Beger and Brendon J. Fox, Beger & Bushie, LLC, Rolla, for Appellant.

Chris Koster, Atty. Gen. and James B. Farnsworth, Asst. Atty. Gen. Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Neldon Neal ("Appellant") appeals the sentence and judgment of the trial court entered after a jury found him guilty beyond a reasonable doubt of voluntary manslaughter, a violation of section 565.023.[1] Appellant was sentenced by the trial court as a prior and persistent offender to life imprisonment.[2] Appellant asserts four points of trial court error. The first three points relied on posit instructional error on the part of the trial court and the fourth point relied on alleges an evidentiary error. In that we reverse and remand on the basis of instructional error, we will not review Appellant's fourth point relied on because the matter is now moot.

"Viewed favorably to the result below ...," *State v. Patterson*, 18 S.W.3d 474, 476 (Mo.App.2000), the evidence adduced at trial shows that Appellant and his wife, Judy Lewis ("Victim"), as well as Marsha Sumrall ("Ms. Sumrall") and Ms. Sumrall's toddler, Lani, were all staying at a trailer home owned by Appellant and Victim.[3] On March 13, 2007, at around 2:00 p.m. Appellant and his friend, Nathan Light ("Mr. Light"), returned to the trailer home after having had several beers. Victim went outside to speak with Appellant and an argument ensued between Victim and Appellant. Mr. Light entered the trailer; told Ms. Sumrall, who was vacuuming, that he and Appellant were "drunker than seven [I]ndians;" and proceeded to the bathroom to take a shower. Meanwhile, while still arguing, Appellant and Victim entered the home and Appellant accused Victim of having an extramarital affair. Appellant, who was red faced and angry, then threw a small stool across the room several times and on the last throw the stool narrowly missed hitting Lani. Ms. Sumrall picked Lani up, took her outside to the car, and returned to the trailer home to retrieve her car keys. When she entered the trailer home, Ms. Sumrall saw Appellant, who was "literally foaming at the mouth" in anger, standing over Victim "trying to kill" her with a knife sharpener. Appellant stabbed down toward Victim, but did not make contact with Victim's body. Ms. Sumrall retrieved a gun that Victim had hidden in the living room and, believing Appellant was going to kill Victim, she pulled the trigger, but the gun failed to fire. Ms. Sumrall then gave the gun to Victim and encouraged her to "kill [Appellant]." Victim did not point the gun at Appellant and Appellant left the room.

Moments later Appellant returned to the living room with a large revolver which he pointed at Victim and he then disarmed her. Ms. Sumrall turned toward the door to leave and Appellant put the gun to the back of her head. Ms. Sumrall heard a loud click and Appellant told her to "[s]top bitching. I'll shoot. Stop [or] I'll kill you." Ms. Sumrall did not heed this warning and darted out the door. According to Ms. Sumrall, she ran to her daughter to shield her from a potential attack. When she turned back toward the trailer home, she saw Appellant and Victim struggling and Victim jumped onto Appellant's back. Appellant then threw Victim from his back

---

1. All statutory references are to RSMo 2000, unless otherwise stated.

2. Appellant had prior convictions for unlawful use of a weapon in 1979, unlawful use of a weapon in 1997, and robbery in the second degree in 1998. His sentence was enhanced from a class B felony to a class A felony.

3. Victim was Ms. Sumrall's "ex mother-in-law" although she often referred to her as "mom."

and into a parked truck. Appellant then turned toward Victim, pointed the barrel of the handgun against her left breast and fired.[4] Victim slumped to the ground and struggled for breath. Appellant knelt beside Victim and told her he loved her before taking off on foot. Mr. Light then helped Ms. Sumrall get Victim into her vehicle and they drove to a convenience store to get help.[5] By the time help arrived, Victim had died from her injuries.

Thereafter, Appellant hid from authorities in the woods for sixty-two days before being apprehended. In statements to police, Appellant maintained Victim's shooting death was a tragic accident.

On August 2, 2007, Appellant was charged by information with one count of the class A felony of murder in the second degree, a violation of section 565.021. A jury trial was held from September 29, 2008, to October 1, 2008. At the conclusion of the evidence, the jury found Appellant guilty of the lesser included offense of voluntary manslaughter. Appellant's sentence was enhanced due to his prior and persistent offender status, section 558.016, and he was sentenced by the trial court to life imprisonment in the Missouri Department of Corrections. This appeal followed.

Appellant's first three points relied on are interrelated and we shall address them together.

In his first point relied on, Appellant maintains the trial court erred in giving Instruction No. 7, the verdict director for voluntary manslaughter, "because there was no evidence of 'sudden passion arising from adequate cause' to support submission of such an instruction." He maintains that section 565.023 "requires the element of 'sudden passion' be present for a person to be guilty of [v]oluntary [m]anslaughter, the State conceded there was no evidence of 'sudden passion' and ... Appellant was prejudiced thereby because he was found guilty without the necessary element of 'sudden passion' being present." *See* § 565.023.1(1).

In his second point relied on, Appellant maintains the trial court erred in giving Instruction No. 5 to the jury, which was the verdict directing instruction for second degree murder. *See* § 565.021.1. He maintains that Instruction No. 5 did not conform to the Missouri Approved Instructions—Criminal ("MAI–CR 3d")[6] in that, pursuant to MAI–CR 3d 314.04 relating to "Murder Second Degree—Conventional," in order to posit the lesser included offense of voluntary manslaughter the inclusion of a paragraph "third" was required, which would contain a statement that the defendant did not cause the death of the victim while "under the influence of sudden passion arising from adequate cause." This was not done and Appellant asserts he was prejudiced by this omission in that the jury was permitted to find him guilty

4. The bullet went through Victim's chest, pierced her heart, and penetrated her left lung.

5. Mr. Light testified that when he emerged from the shower Victim was pointing a gun at Appellant in the living room. He stated Appellant then brushed past him to retrieve a gun from the bedroom and Appellant took Victim's gun from her. According to Mr. Light, Appellant went out the front door, Victim chased after him, and she jumped on his back in the front yard. Appellant then tried to throw Victim from his back in an attempt to flee the area. He related that during the scuffle Victim swung around in front of Appellant such that they were facing one another in close proximity when the gun went off. Victim then gasped, Appellant caught her as she fell, and he professed his love for her. Appellant then ran off into the woods.

6. References to MAI–CR 3d are to September 1, 2003, revision.

of voluntary manslaughter without being required to find that each element of the crime was presented.

In his third point relied on, Appellant asserts the trial court also erred in giving Instruction No. 7, the verdict directing instruction for voluntary manslaughter, "because it contained additional elements not included in Instruction No. 5...." Specifically, he maintains the trial court deviated from MAI–CR 3d by not having identical elements in Instructions No. 5 and 7 contrary to the mandate of paragraph "second" of MAI–CR 3d 314.08, which sets out that "[w]hen voluntary manslaughter is submitted as a lesser included offense of murder in the second degree—conventional, use the same options as were used in the verdict director submitting that form of second degree murder."

■■■ " 'The submission [of] a tendered instruction is within the trial court's discretion.' " *State v. Edwards,* 60 S.W.3d 602, 610 (Mo.App.2001) (quoting *State v. Leisure,* 810 S.W.2d 560, 574 (Mo.App. 1991)). "A jury instruction must be supported by substantial evidence and the reasonable inferences to be drawn therefrom." *State v. Avery,* 275 S.W.3d 231, 233 (Mo. banc 2009). "Deviation from an applicable MAI instruction or its Notes on Use is presumptively prejudicial unless the contrary is clearly demonstrated." *State v. Hughes,* 84 S.W.3d 176, 179 (Mo.App. 2002). However, "[r]eversal is only required, 'for instructional error which misleads the jury to the prejudice of the defendant.' " *Avery,* 275 S.W.3d at 233 (quoting *State v. White,* 738 S.W.2d 590, 593 (Mo.App.1987)).

At the jury instruction conference held prior to the parties' closing arguments, the State offered Instruction No. 5:

[i]f you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 13, 2007, ... [Appellant] caused the death of [Victim] by shooting her, and

Second, that [Appellant] knew or was aware that his conduct was practically certain to cause the death of [Victim], Then you will find [Appellant] guilty of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Appellant] not guilty of murder in the second degree.

Additionally, the State offered Instruction No. 7:

[i]f you do not find [Appellant] guilty of murder in the second degree you must consider whether he is guilty of voluntary manslaughter.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 13, 2007, [Appellant] caused the death of [Victim] by shooting her, and

Second, that it was [Appellant's] purpose to cause the death of [Victim], or

That it was [Appellant's] purpose to cause serious physical injury to [Victim], Then you will find [Appellant] guilty of voluntary manslaughter.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of the propositions, you must find [Appellant] not guilty of voluntary manslaughter.

As used in this instruction, the term 'serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

During the instructional conference, counsel for the defense argued that in order to give MAI–CR 3d 314.08, the instruction for voluntary manslaughter, as a

lesser included offense of MAI–CR 3d 314.04, the instruction for second degree murder, a third paragraph must have been added to Instruction No. 5, to-wit: "if you find her death was not the result of the heat of passion because of adequate cause." He maintained that because "there's no evidence of heat of passion, [the trial court] cannot give voluntary manslaughter." The record reveals the State's attorney did not believe "that there's any evidence that this incident . . . was a result of heat of passion." Nevertheless, he argued that regardless, "it was either [Appellant's] purpose to cause the death of [Victim] or that it was [Appellant's] purpose to cause serious physical injury to [Victim]. For whatever reason, it does not require that the heat of passion be present."

Appellant's counsel also argued that Instruction No. 7 as drafted was not a true lesser included offense to Instruction No. 5 because the State was adding an additional element to Instruction No. 7, specifically "that [Appellant] intended to cause serious physical injury" to Victim. He then finalized his argument before the trial court by stating that

the elements of second-degree murder, as set out in the proposed Instruction 5, and elements of voluntary manslaughter, as set out in 7, are one in the same. It's not a lesser included. It is the same instruction, except he's added an additional element to 7 that—intended to cause serious physical injury. So 7 is not a true lesser included of 5 as he offers them.

The trial court determined that it was "going to give 5 and 7 as proffered" by the State. Appellant's counsel stated that he objected to giving the instructions and he wanted the record to reflect that he was "acquiescing" to the trial court's ruling, but he believed the instructions were "in fact in error." Over counsel for Appellant's objection, the trial court accepted both instructions as tendered by the State and Instructions No. 5 and No. 7 were given to the jury.

On appeal, the State concedes that Instructions No. 5 and No. 7 were given "inconsistent with MAI–CR [3d] and were therefore defective." However, it maintains Appellant "benefited from the instructional error."

■ We agree that both instructions were erroneous and should not have been given as set out. We also agree that while Instruction No. 5 was erroneous, nevertheless, Appellant was acquitted of murder in the second degree, and, as explained below, it is difficult to see how he was prejudiced by the erroneous instruction. We cannot say, however, that Appellant was not prejudiced by the submission of errant Instruction No. 7.

In our unitary review of the first three points relied on, we note that a person is guilty of second degree murder if that person "[k]nowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person . . . ." § 565.021.1(1). The applicable patterned MAI–CR 3d jury instruction for second degree murder is 314.04, which is entitled "MURDER IN THE SECOND DEGREE: CONVENTIONAL." In MAI–CR 3d 314.04, Notes on Use 4, it is explained that "[a] homicide that would be murder in the second degree—conventional is voluntary manslaughter if committed under the influence of sudden passion arising from adequate cause."

Furthermore,

1. A person commits the crime of voluntary manslaughter if he:

(1) Causes the death of another person under circumstances that would consti-

tute murder in the second degree under subdivision (1) of subsection 1 of section 565.021, except that he caused the death under the influence of sudden passion arising from adequate cause;

* * *

2. The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section.

As previously related, the patterned MAI–CR 3d jury instruction for voluntary manslaughter is MAI–CR 3d 314.08. In the Notes on Use for MAI–CR 3d 314.08, it is explained that:

2. This instruction covers only voluntary manslaughter based on a homicide that is 'mitigated' from murder in the second degree-conventional by the existence of sudden passion arising from adequate cause....

3. Generally, voluntary manslaughter under this instruction will be submitted only as a lesser included offense of murder in the second degree-conventional as submitted under MAI–CR 3d 314.04. *To justify such a submission, evidence of sudden passion arising from adequate cause must have been introduced....* In this situation, *this instruction on voluntary manslaughter will be identical to MAI–CR 3d 314.04 [for second degree murder] as to the elements of the offense* except that MAI–CR 3d 314.04 will include the paragraph on negating sudden passion arising from adequate cause.

If murder in the second degree-conventional is submitted, but there is *not sufficient evidence of sudden passion arising from adequate cause ... voluntary*

*manslaughter cannot be submitted as a lesser included offense.*

(Emphasis added.)

In our review of the record, it is clear that Instruction No. 7 was given as a lesser included offense of second degree murder, pursuant to MAI–CR 3d 314.04 and 314.08. The parties are in agreement that MAI–CR 3d 314.08, Notes on Use 4, has no application here. Voluntary manslaughter was submitted as a lesser included offense of second degree murder and not as "the highest degree of homicide submitted" at trial. MAI–CR 3d 314.08, Notes on Use 4.

Here, based on the evidence presented to the jury, the combination of Instruction No. 5 and Instruction No. 7 was error in that these instructions did not follow the requirements of MAI–CR 3d. "The failure to give an instruction in accordance with an MAI–CR or any applicable Notes on Use is error, the prejudicial effect to be judicially determined." *State v. Smith,* 154 S.W.3d 461, 465 (Mo.App.2005); Rule 28.02(f).[7] It is clear from the Notes on Use for MAI–CR 3d 314.08 that the voluntary manslaughter instruction is *only* to be given when there has been evidence presented that a defendant acted out of "sudden passion arising from adequate cause." Here, as previously related, the parties are in agreement there was no such evidence presented at trial.

Additionally, we gratuitously note that when giving a voluntary manslaughter instruction as a lesser included offense of second degree murder, the "elements of the offense" set out in the second degree murder instruction and the voluntary manslaughter instruction are required to "be identical." MAI–CR 3d 314.08, Notes on Use 3. That did not occur in the present

7. All rule references are to Missouri Court Rules (2008).

matter. The trial court erred in submitting both instructions to the jury.

■ Nevertheless, remembering that "[o]n a claim of instructional error, 'an appellate court will reverse only if there is error in submitting an instruction and prejudice to the defendant,'" *State v. Taylor*, 134 S.W.3d 21, 25 (Mo. banc 2004) (quoting *State v. Taylor*, 944 S.W.2d 925, 936 (Mo. banc 1997)), we now consider whether Appellant was prejudiced by the submission of these erroneous jury instructions. "When used in connection with assessing erroneous jury instructions, 'prejudice' is the potential for confusing or misleading the jury." *State v. Dismang*, 151 S.W.3d 155, 164 (Mo.App.2004) (quoting *State v. Sours*, 946 S.W.2d 747, 750 (Mo.App.1997)).

The State maintains that while the instructions were erroneous, Appellant was not prejudiced by them. The State argues "[t]he problem was not the omission of the 'sudden passion' element from [Instruction No.] 5, but the mislabeling of [Instruction No.] 7 as a 'voluntary manslaughter' instruction when in fact it was an alternative second-degree murder instruction." It also argues the jury's verdict supported a conviction for the greater offense.

Appellant counters, however, that by finding him guilty of voluntary manslaughter the jury implicitly found him not guilty of murder in the second degree as postulated in Instruction No. 5. More importantly, he argues he was prejudiced by the giving of the erroneous Instruction No. 7 because he was found guilty of voluntary manslaughter without the element of "sudden passion arising from adequate cause" being proven or even presented to the jury. He maintains that without the erroneously submitted voluntary manslaughter instruction he "obviously . . . could not and would not have been convicted of the same."

■ We initially observe that "[t]he court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2, RSMo Cum.Supp.2002. In the instant matter, there was no basis for convicting Appellant of the lesser included crime of voluntary manslaughter, as set out in section 565.023.1, due to the absence of any evidence showing that Appellant caused the death of Victim while under the influence of "sudden passion arising from adequate cause," as both parties concede. "Verdict directing instructions must contain each element of the offense charged and require 'a finding of all the constituent facts necessary to constitute an offense in order to support a conviction.'" *State v. Rodgers*, 641 S.W.2d 83, 84–85 (Mo. banc 1982) (quoting *State v. Newhart*, 503 S.W.2d 62, 69 (Mo.App. 1973)). "In determining whether the misdirection likely affected the jury's verdict, an appellate court will be more inclined to reverse in cases where the erroneous instruction 'did not merely allow a wrong word or some other ambiguity to exist, but excused the State from its burden of proof on a contested element of the crime.'" *State v. Roe*, 6 S.W.3d 411, 415 (Mo.App. 1999) (quoting *State v. Doolittle*, 896 S.W.2d 27, 30 (Mo. banc 1995)).

Here, the jury was misdirected by the wording of Instruction No. 7 in that it permitted the jury to find Appellant guilty of a crime that it was impossible to commit given the apparent absence of "sudden passion." As a result of this deviation, Instruction No. 7 was prejudicial. Rule 28.02(f); *see State v. Newhart*, 503 S.W.2d 62, 69 (Mo.App.1973) (holding that in relation to verdict directing instructions "there is one principle of law . . . so basic and fundamental that its violation irrevocably

precludes a finding of harmless error—a verdict directing instruction must require a finding of all the constituent facts necessary to constitute an offense in order to support a conviction").

■ "Where a conviction is reversed solely for trial error, such as the instructional error found in this case, retrial does not offend double jeopardy and is constitutionally permissible." *State v. White*, 92 S.W.3d 183, 193 (Mo.App.2002); *see State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007). "The prospect of retrial raises the question of what proceedings [can] be had on remand." *State v. Moseley*, 735 S.W.2d 46, 48–49 (Mo.App.1987). Appellant requests a judgment of acquittal, or in the alternative, that the case be remanded for a new trial as to involuntary manslaughter only. The State does not specifically address the issue. In that Appellant was acquitted of murder in the second degree, on remand Appellant cannot be retried for this same offense. *White*, 92 S.W.3d at 193; *Moseley*, 735 S.W.2d at 48. Given this posture, it follows that neither can Appellant be retried for voluntary manslaughter as a lesser included offense of second degree murder. *See* MAI–CR 3d 314.08, Notes on Use 2 and 3. The judgment of conviction for voluntary manslaughter is reversed and the cause is remanded for a new trial in accordance with this opinion. *See White*, 92 S.W.3d at 193.

BATES, P.J., and BURRELL, J., concur.