STATE of Missouri, Plaintiff–
Respondent,

v.

Neldon H. NEAL, Defendant–Appellant.

No. SD 31057.

Missouri Court of Appeals,
Southern District,
Division One.

March 23, 2012.

Erika R. Eliason, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO., for Respondent.

DON E. BURRELL, Presiding Judge.

Neldon H. Neal ("Defendant") appeals his conviction of involuntary manslaughter in the first degree for the shooting death of Judy Lewis ("Victim"). *See* section 565.024.[1] In a prior trial, a jury acquitted Defendant of second-degree murder, but found him guilty of voluntary manslaughter. We subsequently reversed Defendant's voluntary manslaughter conviction and its accompanying life sentence in *State v. Neal,* 304 S.W.3d 749, 750 (Mo.App. S.D.2010) (*Neal I* ).

As none of the complaints Defendant asserts in the instant appeal were presented to the trial court, he seeks plain-error review. Defendant claims the trial court clearly erred by: 1) violating his right to be free from double jeopardy in that the State's second amended information charged him with "knowingly" causing the death of Victim—the mental state required for the second-degree murder charge of which he was previously acquitted; and 2) submitting an instruction to the jury that authorized it to find him guilty of involuntary manslaughter in the first degree if it found that he "recklessly" caused the death of Victim—a different mental state than that alleged in the second amended information. Finding no merit in either contention, we affirm.

**Applicable Principles of Review**

■ An issue not properly preserved for appellate review "may be reviewed for

---

1. Defendant received a fifteen-year sentence as a persistent felony offender. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp.2011, and all rule references are to Missouri Court Rules (2011).

plain error only[.]" *State v. Storey,* 40 S.W.3d 898, 903 (Mo. banc 2001). "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.

 "The rule has long been established that to preserve constitutional questions for review on appeal, the constitutional issue must be raised in the trial court at the earliest opportunity, consistent with good pleading and orderly procedure." *Carpenter v. Countrywide Home Loans, Inc.,* 250 S.W.3d 697, 701 (Mo. banc 2008). "The determination of whether the protections against double jeopardy apply is a question of law which this court reviews de novo." *State v. Mullenix,* 73 S.W.3d 32, 34 (Mo.App. W.D.2002).

### Facts and Procedural Background

Defendant was originally charged with second-degree murder. As earlier noted, the jury in Defendant's first trial convicted him of the lesser-included crime of voluntary manslaughter. *Neal I,* 304 S.W.3d at 751. In *Neal I,* we held that the verdict directors submitted to the jury were erroneous because voluntary manslaughter was submitted as a lesser-included offense of second-degree murder without the necessary predicate evidence at trial of "sudden passion arising from adequate cause." *Id.* at 754. We found Defendant was prejudiced thereby as "it permitted the jury to find [Defendant] guilty of a crime that it was impossible to commit given the apparent absence of 'sudden passion.'" *Id.* at 755. And because Defendant was acquitted of the greater charge, he could not again be tried for voluntary manslaughter as a lesser-included offense of a greater charge now barred by double jeopardy. *Id.* at 756.

After we issued our mandate reversing the conviction, the State, acting consistently with that mandate, charged Defendant in an "Amended Information" as a persistent offender with first-degree involuntary manslaughter for "recklessly caus[ing] the death of [Victim] by shooting her[.]" Five days before Defendant's second trial commenced, the State filed a "Second Amended Information." That information was still subtitled "Involuntary Manslaughter in the First Degree" but it charged Defendant with "knowingly" causing the death of Victim instead of "recklessly" doing so.

### The Second Trial

The evidence adduced at Defendant's second trial is summarized here in the light most favorable to the verdict. *See State v. Stidman,* 259 S.W.3d 96, 98 (Mo. App. S.D.2008). On March 13, 2007, Marsha Sumrall and her small child were living with Victim and Defendant at their trailer in Roby. Ms. Sumrall was formerly Victim's daughter-in-law and viewed Victim as her "mom." Defendant and Nathan Light arrived at the trailer around 2:00 p.m.

Mr. Light went to Defendant's trailer to help him with an awning, to take a shower (because Mr. Light did not have hot water at his residence), and to have a sandwich. Both Defendant and Mr. Light had been drinking alcohol, and Mr. Light believed they were both drunk. After the two men arrived at the trailer, Defendant changed his mind about doing anything with the awning. Mr. Light went inside to take a shower, and while he was showering he heard "murmuring and cussing and carrying on, but [he] ignored it[.]"

Ms. Sumrall, who was inside the trailer, heard Defendant yelling at Victim outside the residence. The yelling continued as the two came inside the trailer. Defendant was calling Victim derogatory names

and accusing her of infidelity. Defendant grew angrier "and started foaming at the mouth." Defendant also yelled at Ms. Sumrall, calling her names. He threw a barstool three times. Ms. Sumrall, who was frightened by Defendant's behavior, took her child and ran to her car, forgetting to take her car keys with her. When she went back inside to retrieve her keys, Defendant was standing over Victim, holding a knife sharpener. Victim was crouched down and had her hands in the air. Ms. Sumrall "[had] never seen a look of terror in [Victim's] eyes like that." Ms. Sumrall knew where a gun was kept inside the trailer. She "grabbed the gun and turned and pointed it [at Defendant], and [she] tried to make it work[,]" but the gun did not fire. At that moment, Mr. Light came into the living room. Defendant said he was sorry, put the knife sharpener on the kitchen counter, and went to the back of the trailer.

When Defendant left the room, Ms. Sumrall gave the gun to Victim and told her to kill Defendant. Instead, Victim, still holding the gun, sat in a chair. Defendant returned to the living room—holding a bigger gun—and took from Victim the smaller gun she was holding. Ms. Sumrall described what happened next as follows:

> Um, [Defendant] said, bitch, pull a gun on me and I'll kill you. You know, at that time I turned to run out the front door, and he put the little gun to the back of my head and it went click. And he's like, stop bitching, I'll shoot. I then see [my child] standing in front of my car, so I knew I had to get to her.

Ms. Sumrall ran toward her child and Defendant chased her. Victim ran after Defendant and jumped on his back. Defendant threw Victim off his back, and she landed against a truck parked next to Ms. Sumrall's car. Defendant then pointed the gun in Victim's direction and fired. Ms. Sumrall heard the gunshot and saw smoke come out of Victim's chest. Victim "grabbed her chest and toppled to the ground."

Ms. Sumrall put her child in her car, directed Mr. Light to also put Victim in, retrieved her car keys from inside the trailer, and drove to a convenience store in Roby. A Texas county deputy, medical personnel, and other law enforcement-related persons responded to Ms. Sumrall's car at the convenience store. The Texas County coroner testified that Victim was in the back seat "in a sitting position and deceased." [2]

■ Several officers then went to Defendant's residence and found it vacant. A search for Defendant ensued, and he was eventually located sixty-two days later at a campsite in "a very, very remote rugged wooded area along the [Gasconade R]iver." Defendant was taken into custody and executed a written waiver of rights before being questioned. During that questioning, Defendant informed the authorities where to find the gun he had used to shoot Victim. The interview of Defendant was recorded. Although that recording was admitted into evidence and played for the jury, Defendant did not include it in the record on appeal.[3]

---

**2.** A subsequent examination revealed that Victim's heart and one lung were perforated by a single bullet and that she died from excessive blood loss.

**3.** "When an exhibit is not filed with an appellate court, its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *State v. Davis*, 242 S.W.3d 446, 449 n. 1 (Mo.App. S.D.2007).

### The Challenged Jury Instruction and Resulting Verdict

The verdict-directing instruction, Instruction No. 6, submitted to the jury at Defendant's second trial read as follows.

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about March 13, 2007 ... [Defendant] caused the death of [Victim] by shooting her, and
>
> Second, that [D]efendant recklessly caused the death of [Victim],
>
> then you will find [Defendant] guilty of involuntary manslaughter in the first degree.

The instruction further stated "that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances."

Defense counsel argued to the jury, consistent with his opening statement, that "this was an accident, [a] terrible and tragic accident, but an accident nonetheless." The jury found Defendant guilty of involuntary manslaughter in the first degree, and this appeal timely followed his subsequent sentencing.

### Analysis

#### Point I—Double Jeopardy

Defendant's first point contends his conviction of first-degree involuntary manslaughter violated his Fifth and Fourteenth Amendment rights to be free from double jeopardy. Defendant bases this claim on the fact that the State's second amended information charged Defendant with "knowingly" causing the death of Victim (the mental state required to prove second-degree murder) "and in the appeal from that [second-degree murder] conviction this Court reversed his conviction of the lesser[-]included offense of voluntary manslaughter in the first degree." As earlier indicated, Defendant acknowledges that "because the issue was not raised at the trial court level, [he] is forced to request review for plain error." [4]

Defendant cites *State v. Elliott*, 987 S.W.2d 418 (Mo.App. W.D.1999), as an example of plain error review of an alleged double-jeopardy violation. In *Elliott*, the court stated that "an exception [to the rule permitting waiver of a double-jeopardy claim] should be made in any case in which we can determine from the face of the record that the court had no power to enter the conviction." *Id.* at 421 (citing *Hagan v. State*, 836 S.W.2d 459, 461 (Mo. banc 1992)), *overruled on other grounds by State v. Heslop*, 842 S.W.2d 72 (Mo. banc 1992).[5]

---

**4.** Defendant raised the double-jeopardy issue in his motion for new trial and argued it at the sentencing hearing, but this was not "the earliest opportunity, consistent with good pleading and orderly procedure." *Carpenter*, 250 S.W.3d at 701. *Cf. State v. Knifong*, 53 S.W.3d 188, 192 (Mo.App. W.D.2001) ("[a] motion for new trial is too late to properly assert and preserve a claim that a statute is constitutionally invalid").

**5.** In *Elliott*, the court discussed both the Fifth Amendment's double jeopardy clause and the prohibition stated in section 556.041(1) against conviction for multiple offenses where

"[o]ne offense is included in the other[.]" *Id.* at 420–22. Mr. Elliott was convicted of both first-degree robbery and first-degree assault, in addition to other offenses, resulting from acts against a single victim on one occasion. *Id.* at 419–20. In that particular case, a deadly weapon or dangerous instrument was not used to commit the robbery, and the defendant was charged "with assault causing serious physical injury to the victim and with causing a serious physical injury to rob her. The first-degree assault charge did not require proof of a fact which the robbery charge did not also require." *Id.* at 421. The court

■ A review for plain error involves two steps.

First we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. [*State v. Kidd*, 75 S.W.3d 804, 811 (Mo.App.2002)]. If so, we can then, in our discretion, consider whether a miscarriage of justice or manifest injustice will occur if the error is not corrected. *Id.* at 811–12. An appellant must go beyond a mere showing of prejudice to show manifest prejudice affecting his substantial rights. *Id.* at 812.

*State v. Washington*, 249 S.W.3d 255, 257 (Mo.App. W.D.2008). Here, we do not make it past the first step, as Defendant has not facially demonstrated the existence of an error that gives us substantial grounds for believing that a manifest injustice or miscarriage of justice has occurred.

■ Here, assuming *arguendo*, that the State's second amended information charged Defendant with second-degree murder, he was tried and convicted of first-degree involuntary manslaughter, not second-degree murder or voluntary manslaughter.

■ Defendant next argues that "[d]ue process mandates that a criminal defendant may not be convicted of an offense not expressly charged in the information or indictment, citing *State v. Hibler*, 5 S.W.3d 147, 150 (Mo. banc 1999). But

[a] defendant may be convicted of any lesser offense necessarily included in an indictment or information. *Hibler*, 5 S.W.3d at 150. Accordingly, since involuntary manslaughter is a lesser included offense of second degree murder, *State v. Smith*, 737 S.W.2d 731, 734 (Mo.App.

W.D.1987), the information charging [a]ppellant with second degree murder was sufficient to support trying him for involuntary manslaughter. Likewise, the original information charging [a]ppellant with armed criminal action in connection with the murder in the second degree charge was sufficient to support [a]ppellant's conviction of armed criminal action in connection with the lesser-included offense of involuntary manslaughter.

*State v. Hayes*, 88 S.W.3d 47, 55 (Mo.App. W.D.2002). For due-process purposes, "a defendant is deemed to have notice that he could be convicted of any lesser-included offense of a charged crime." *Id.* at 56 n. 4.

■ The State's initial amended information, filed after our remand in *Neal I*, clearly stated the offense charged was involuntary manslaughter, it cited the involuntary manslaughter statute (section 565.024) as authority, and it alleged that Defendant "recklessly caused" the death of Victim as required by section 565.024.1. The second amended information changed the dates of Defendant's alleged prior convictions and asserted that Defendant "knowingly caused" Victim's death. Despite this change in the mental state asserted, the second amended information still referred to the offense charged as "Involuntary Manslaughter in the First Degree," and it still cited section 565.024, the involuntary manslaughter statute.

The incorrect use of the "knowingly caused" language in the State's second amended information did not create a double-jeopardy violation in the instant case because the jury convicted Defendant of first-degree involuntary manslaughter; it did not convict Defendant of either second-degree murder or voluntary manslaughter. As discussed more fully in our analysis of

vacated the conviction with the shorter sentence. *Id.* at 422.

Defendant's second point, the jury was asked to determine whether Defendant "recklessly" caused Victim's death—the appropriate mental state for first-degree involuntary manslaughter. Moreover, our review of the transcript reveals that the word "knowingly" was never uttered during Defendant's second trial. It is clear that the case was prosecuted, defended, and submitted to the jury for it to determine whether Defendant was guilty of first-degree involuntary manslaughter, not second-degree murder or voluntary manslaughter. No manifest injustice or miscarriage of justice appears. Point one is denied.

*Point Two—Alleged Instructional Error*

▉ Defendant's second point contends the trial court erred in instructing the jury that it could find Defendant guilty of first-degree involuntary manslaughter "if [it] found that [Defendant] recklessly caused the death of [Victim]" because this "fundamentally changed the culpable mental state" as set forth in the second amended information. As with his first point, Defendant acknowledges that his claim may only be reviewed for plain error as he lodged no objection to the submission of this instruction at trial.[6]

Defendant does not allege that the challenged instruction incorrectly set forth the elements necessary to support a conviction for first-degree involuntary manslaughter, and he acknowledges that instructional error seldom constitutes plain error, citing *State v. Thomas,* 75 S.W.3d 788, 791 (Mo. App. E.D.2002). Instead, Defendant char-

acterizes his claim as one pointing out a "fatal variance" between the charge and the instruction. Defendant argues that he "was entitled to rely on the factual allegations in the second amended information[,]" citing *State v. Madison,* 997 S.W.2d 16, 19 (Mo. banc 1999), and that it was a manifest injustice for "the State to fix the error in the second amended information by means of the jury instruction."

▉ "A variance is prejudicial only if it affects the appellant's ability adequately to defend against the charges presented in the information and given to the jury in the instructions." *State v. Lee,* 841 S.W.2d 648, 650 (Mo. banc 1992); *see also Madison,* 997 S.W.2d at 19 (even if the charging document was incorrect, the defendant must still demonstrate actual prejudice); *State v. Goss,* 259 S.W.3d 625, 627 (Mo. App. S.D.2008) ("[e]ven a material variance is prejudicial only if it impairs the defendant's ability to adequately defend"). Indeed, "the *Crossman* Court enunciated a standard that 'unless the defendant can be said to have been prejudiced in that he would have been better able to defend had the information contained the phrase ..., he should not be entitled to relief on account of the variance.'" *Lee,* 841 S.W.2d at 650 (quoting *State v. Crossman,* 464 S.W.2d 36, 42 (Mo. banc 1971)).

As noted by the State, section 562.021 addresses the application of culpable mental states and provides that while "reckless" acts are insufficient to prove that someone "knowingly" acted in a certain way, "[w]hen recklessness suffices to es-

---

**6.** Rule 28.03 provides that "[n]o party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The rule also provides that "[t]he objections must also be raised in the motion for new trial in accordance with Rule 29.11." *Id.* Defendant's motion for new trial claimed that the verdict director was erroneous, but not because it varied from the charge. Rather, Defendant alleged in his motion for new trial that the instruction "fail[ed] to specify what actions of Defendant the State alleged were reckless[.]"

tablish a culpable mental state, it is also established if a person acts purposely or knowingly." Section 562.021.3 and .4, RSMo 2000. Defendant argues that he "was not properly given notice that he would be required to defend against the 'reckless' mental state which greatly impaired his ability to properly prepare his defense." Tellingly, he suggests no actual impairment or harm. And, given our opinion from Defendant's first appeal, the language used in the State's first amended information, the other language used in its second amended information, and our review of the transcript of Defendant's second trial, Defendant's claim of prejudice due to lack of notice is unpersuasive. Defendant's position from his opening statement through closing argument was that the incident was an accident. This clearly refutes Defendant's after-the-fact claim that the substitution of "knowingly caused" for "recklessly caused" in the State's second amended information negatively impacted his ability to adequately defend the case.

The challenged instruction was not erroneous—it correctly submitted the charge of first-degree involuntary manslaughter. And Defendant's trial conduct demonstrated that the erroneous language in the State's second amended information did not prejudice his ability to prepare and execute his defense. No manifest injustice or miscarriage of justice appears. Defendant's second point is also denied, and the judgment of conviction and sentence is affirmed.

RAHMEYER, and LYNCH, JJ., Concur.